DAVID (DICK) FRANKLIN and WAYNE MALONE

*v.*

STATE OF TENNESSEE

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

Leon E. Easterly, Greeneville, for plaintiffs in error.

James M. Glasgow, Assistant Attorney General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

Plaintiffs-in-error, Franklin and Malone, appeal from a conviction "of receiving and concealing stolen property", that being the second count of a two-count indictment wherein the first count charges larceny of the goods in question, to-wit, two calves. Jessie Miser, who was jointly indicted and convicted with them, did not appeal.

At the outset, the Court should thank Mr. Easterly of the Greeneville Bar for his unselfish services in representing these defendants — plaintiffs-in-error — by appointment of Court.

Malone, Franklin and Miser came to the home of Harrison Britt fairly late in the afternoon of the day before there disappeared from the barn of Britt two calves

worth approximately $20, the property of Britt. These are the calves with which these three men are charged in the first count of the indictment with having stolen, and in the second count with having received them knowing them to be stolen with intent to deprive the true owner thereof. Ostensibly their visit was social, and because of the illness of Britt's wife. Malone was a cousin. They were traveling in an automobile belonging to Miser.

The next morning Britt's calves were gone from the barn, wherein they were being held. The tracks of an automobile led from that barn. Britt testifies that they were stolen during the night. He repeatedly denies on cross-examination that he sold the calves to plaintiffs-in-error, or either of them.

On the next morning after the aforesaid visit these two calves were taken to the stockyard in Greeneville, they being held in some manner on the floor in front of the rear seat of Miser's car. Franklin, Malone and Miser were in the front seat of this car. A man named Bible bought from Malone and Miser one of the calves for $15. On the next morning when the question was raised as to whether the calves were stolen Miser, though denying that, refunded the $15. The other calf was sold for $5 to a man named Seaton. The sheriff and the owner, Britt, took this calf from Malone, presumably by writ of replevin. Seaton says there was another person in the car besides Malone and Miser. He cannot say whether it was Franklin.

Miser did not testify. Both Franklin and Malone testified that they accompanied Britt to the barn where he went to milk. The calves were there. They say that he told them he needed money, and suggested that they buy

the calves for $20. They say they paid him $15 and were to pay him $5 more. They then, according to their testimony, took the calves away in Miser's car, kept them in that car all night while the three spent the night at the home of Miser's sister. On the next morning they took the calves to the stockyard and undertook the sales heretofore mentioned.

A witness by the name of Samuel Mitchell testified that he went with the three defendants on the visit to Britt's home, heard the transaction with reference to sale of the calves and that the sale did occur as testified to by Franklin and Malone.

On the next day after the sale the three defendants and Mitchell went to Illinois to work, they say. They had previously worked there. On warrants charging this theft, etc. they were returned by the sheriff of Greene County.

Directed to the fact that the above is all the evidence introduced in the case, these plaintiffs-in-error insist that ''there is no evidence to support the jury's verdict'', and that it ''is contrary to the law applicable to cases of this kind''. All the evidence is that Franklin, Malone and Miser took the calves from the barn of the owner, Britt. The only issue in the case was whether they feloniously took them that night by theft, or whether they were sold to them by Britt. There was no evidence whatever, direct or circumstantial, of the receipt of the calves by these men from a third party.

██ ██ Receiving stolen goods, knowing the same to have been stolen, etc., is made a substantive felony by Code Sections 39-4217, 39-4218. *Swaggerty v. State,* 17 Tenn. 338, 341. Substantial evidence of the commission

of such an offense must, of course, be offered in support of a verdict to that effect. Evidence sufficient to support a verdict of stealing the property is not, *per se,* sufficient to support a verdict of receiving such stolen property knowing it to be stolen, and with the intention of depriving the true owner thereof.

█ A decision directly in point is *Parham v. State,* 78 Tenn. 498, 500. Under the two count indictment in that case the Trial Judge instructed the jury with reference to the count charging receipt of stolen goods, etc. that before the jury could convict under that count

"the State must establish beyond a reasonable doubt the *corpus delicti,* and venue as above, and that some other person committed the larceny, and the prisoner received said hogs, or enough of them to be of some value, knowing them to be stolen."

In commenting upon that charge and of a defect therein with which this opinion is not concerned, this Court in that case said:

"As a matter of fact, however, no proof was introduced by the State to sustain that count. All of the evidence bore upon the question of larceny. If the testimony embodied in the bill of exceptions does not show the defendant guilty of that offense, he is clearly not guilty of any offense."

This necessarily means exactly what the Trial Judge there charged to-wit, that evidence of the larceny is not evidence of receiving the stolen property with knowledge, etc.

█ In *Parham v. State, supra,* the jury returned a general verdict; hence, that verdict could be allocated to the

count which was supported by substantial evidence. Such is not the situation here. The jury returned a verdict finding these defendants guilty under the count charging receipt, etc. This amounted in law to an acquittal of the count charging the theft of these calves. Directly in point is *Asbury v. State,* 178 Tenn. 43, 46-47, 154 S.W.2d 794, 795, as follows:

"(3) There was a second count in the indictment which charged the defendants with making an assault upon the body of Archie Sharp with force and arms and with intent to commit murder in the first degree. This is the count upon which the State should have relied for a conviction. The jury, however, convicted the defendants upon the first count, their verdict being that the defendants 'are guilty as charged in the indictment for conspiracy,' the effect of this verdict being to acquit the defendants of the crime set forth in the second count."

For a general statement of this rule see 52 C.J.S. Larceny sec. 156, Partial Verdict, p. 1013.

The aforementioned assignments of error will be sustained, the judgment reversed and the cause remanded with suggestion that the State recommend a verdict of not guilty or move that the case be nolled.