STATE OF TENNESSEE

*v.*

JAMES DANIEL DEVITT.

384 S.W.2d 26.

(*Knoxville,* September Term, 1964.)

Opinion filed November 12, 1964.

HAGER ODOM, Chattanooga, for James Daniel Devitt.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for the State.

MR. SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

The Plaintiff in error, hereinafter referred to as the Defendant or by name, was indicted in a two count indictment charging that he did unlawfully and feloniously take, steal and carry away a certain automobile belonging to one Lloyd Russell Ransom, Jr., with the intent to convert same to his own use, and in the second count of said indictment, the Defendant was charged with feloniously receiving and concealing said automobile with the intent to deprive the true owner thereof. The jury acquitted the Defendant of the charges under count I of said indictment, but convicted the Defendant under count II of same for receiving and concealing said automobile.

The Defendant assigns errors:

(1) That the verdict is contrary to the law,

(2) That the verdict is contrary to the law and the evidence,

(3) There was no evidence submitted by the prosecution to sustain a verdict under the second count of the indictment.

(4) That the verdict of the jury in acquitting the Defendant on the first count effected a complete acquittal since no evidence was offered by the State to support the second count of the indictment,

(5) That it was error for the Court to allow testimony from witness Shutters, an officer, concerning the conversation he had with John Webb relative to the reasons for said John Webb having certain automobile parts in his possession, the said John Webb not being offered as a witness by the State.

A brief statement of the facts shows that a 1963 Chevrolet automobile belonging to Lloyd Russell Ransom, Jr. was stolen from a parking lot near the Interstate Building on McCallie Avenue in Chattanooga, Tennessee, between the hours of 5:45 and 8:45 P.M. on September 23, 1963. That on September 25, 1963, the owner was advised that a car answering the description of his car had been found stripped on Lewis Street in Chattanooga and that the owner went and examined the car and identified same as his automobile. That a wrecker was called to the scene from the Morningside Garage and said automobile was moved to said garage on McCallie Avenue in Chattanooga. That when the owner went to the garage he observed there a 1963 Chevrolet belonging to one Hood which was in the process of being repaired. That lying in front of said vehicle was a portion of a bumper which appeared to be the bumper from Ransom's car. Ransom identified the bumper by certain markings thereon and also identified other parts on the Hood car as being parts formerly on the Ransom car. Ransom testified that his car had been damaged approximately one month before it was stolen and had not been repaired and, therefore, he was able to identify parts which formerly

were on his car. Later, Ransom went to the Attorney General's office with Investigator Howard Shutters and discussed the matter.

Shutters, the investigator, testified that he was called into the matter with one Marshall Mathis, a city detective, and that they talked with the Defendant at the police station on September 27, 1963, after the Defendant had been picked up by another police officer, one J. B. Newell. Shutters had previously questioned John A. Webb, Jr., the owner and operator of the Morningside Garage and the employer of the Defendant, and that he obtained certain information from Webb on which the Defendant was picked up and brought in for questioning. The Defendant stated to the officers that he had bought a front end of a 1963 damaged vehicle from a man in Monteagle on September 22, 1963, and delivered it to the Morningside Motors and sold same to Webb, the owner and operator of said garage. He stated that the Defendant told him that he had made a $100.00 deposit for said parts and that Webb gave him a check in the amount of $145.00, which he cashed and took back to Monteagle to finish paying for said parts. Subsequently, Ransom testified that he went to Lafayette, Georgia and identified certain personal effects found in that city as being personal property removed from his vehicle, and that later he identified a door in Rossville, Georgia as being one of the doors taken from his car. This is practically all of the proof offered by the State.

The Defendant testified in his own defense and denied that he had stolen Ransom's automobile or that he had any knowledge of said vehicle or any of the parts therefrom. He stated that he went to his home from the place of his employment, the Morningside Motors, on the eve-

ning of September 23, 1963, and was at home the entire evening and night. He testified that he was employed as a wrecker driver for the Morningside Motors and that he had nothing to do with the management or operation of said business. He testified that at no time did he ever have possession of the Ransom vehicle or any parts therefrom. He further testified that on September 22, 1963, his employer sent him to Nashville to pick up certain automobile parts at a used parts concern, the order having been phoned in to said company by Webb, the owner and operator of the Morningside Garage; that on his return trip, he noticed an automobile in a used car parts lot and that he stopped and discussed the purchase of this car with the owner. The Defendant testified that he discussed this trip with witness Shutters, but that at no time did he ever acknowledge to the officer that he had any knowledge of where the parts that were being used to repair the Hood vehicle came from unless they were included in the parts that he had brought back from Nashville on September 22, 1963. He further stated that he did not load said parts onto the truck in Nashville and that when he arrived back at the garage in Chattanooga, he parked the vehicle in the garage where it was unloaded by other employees. The wife of the Defendant testified that her husband went to Nashville on September 22nd and that he was at home the entire evening and night on both September 22nd and September 23rd.

Without considering other assignments of error, we believe that this case must be reversed and dismissed on the third and fourth assignments, as there was no evidence offered by the State as to receiving and concealing said automobile or any of the parts thereof and that the acquittal of the Defendant on the first count of lar-

ceny effected a complete acquittal since no evidence was offered by the State to support the second count of the indictment.

■ We have read the bill of exceptions through several times and nowhere do we find any evidence that this automobile or any of the parts thereof were ever concealed or possessed by the Defendant. In fact, some of the parts were found in the possession of John Webb and no explanation is made why Webb was not called as a witness by the State to show how he came into possession of these parts.

A similar case was before this Court in the case of *Franklin v. State,* 202 Tenn. 666, 308 S.W.2d 417. In this case, the Defendants were charged in a two count indictment with larceny of property and with receiving and concealing same. The Court held that finding Defendants guilty under the count of receiving stolen property amounted to an acquittal of the charge of theft. In this case the Court, speaking through Justice Tomlinson, said:

"Receiving stolen goods, knowing the same to have been stolen, etc., is made a substantive felony by Code Sections 39-4217, 39-4218. *Swaggerty v. State,* 17 Tenn. 338, 341. Substantial evidence of the commission of such an offense must, of course, be offered in support of a verdict to that effect. Evidence sufficient to support a verdict of stealing the property is not, per se, sufficient to support a verdict of receiving such stolen property knowing it to be stolen, and with the intention of depriving the true owner thereof.

"A decision directly in point is *Parham v. State,* 78 Tenn. 498, 500. Under the two count indictment in that

case the Trial Judge instructed the jury with reference to the count charging receipt of stolen goods, etc. that before the jury could convict under that count.

" 'the State must establish beyond a reasonable doubt the corpus delicti, and venue as above, and that some other person committed the larceny, and the prisoner received said hogs, or enough of them to be of some value, knowing them to be stolen.'

In commenting upon that charge and of a defect therein with which this opinion is not concerned, this Court in that case said:

" 'As a matter of fact, however, no proof was introduced by the State to sustain that count. All of the evidence bore upon the question of larceny. If the testimony embodied in the bill of exceptions does not show the defendant guilty of that offense, he is clearly not guilty of any offense.' "

It, therefore, results that assignments three and four are sustained and the cause is remanded with the suggestion that the State recommend a verdict of not guilty or move that the case be nolled.