**STATE of Tennessee, Appellant,**

v.

**Alvin THARPE, Defendant-Appellee.**

Supreme Court of Tennessee,
at Jackson.

March 9, 1987.

W.J. Michael Cody, Atty. Gen. and Reporter, William Barry Wood, Asst. Atty. Gen., Nashville, Thomas T. Woodall, Asst. Dist. Atty. Gen., Paris, for appellant.

Alvin Tharpe, pro se.

Thomas F. Ventimiglia, Swayne, Groom, Hessing and Ventimiglia, Paris, for defendant-appellee.

## OPINION

DROWOTA, Justice.

Permission to appeal has been granted in this case to clarify the law concerning whether circumstantial evidence, from which the jury could reasonably find that stolen goods had been received from a third person, is sufficient to convict a defendant. Defendant, Alvin Tharpe, was convicted by a Henry County jury of receiving stolen property under T.C.A. § 39-3-1113 (receiving stolen property with a value under $200); he was sentenced to two years in the Henry County Jail as a Range I, Standard Offender. On appeal, a divided panel of the Court of Criminal Appeals reversed Defendant's conviction, finding that no evidence showed that Defendant had received the stolen property from a third person. We reverse the Court of Criminal Appeals and reinstate the judgment of the trial court.

The Defendant's conviction is based wholly on circumstantial evidence. Sometime during the night of May 22 or the morning of May 23, 1984, the Towne House Restaurant in Paris, Tennessee, was burglarized. Entry was gained through a broken blade in the exhaust fan at the rear of the building. The fan was greasy and foot, hand, and finger prints were left by the burglar on a table beneath the fan and on the floor of the restaurant. The interior office door and a filing cabinet in the office were both forced open. Approximately $100 in various denominations of change was taken along with some 17 to 20 blank, unsigned payroll checks, which had been torn from the middle of the unused portion of the checkbook.

Between 9:00 and 10:00 on the morning of May 23, 1984, Defendant entered the Commercial Bank and Trust Company of Paris. Presenting a Towne House Restaurant payroll check, drawn for $200 and apparently signed by the restaurant's owner, Defendant claimed to be Aaron Dolberry, an employee of the restaurant and the named payee. Ms. Anita Ford, the teller trainee to whom the check was presented, knew that Defendant was not the Aaron Dolberry with whom she was familiar and asked Defendant to endorse the check. Having overheard, Ms. Marjorie Redmon, an experienced teller, offered her assistance. She too knew an Aaron Dolberry and did not recognize Defendant as the Aaron Dolberry she knew. Ms. Redmon called Defendant to her window and requested that he present identification. Defendant had endorsed the check as Aaron Dolberry but told Ms. Redmon that his identification was in his car. Taking the check, Defendant left the bank ostensibly to obtain identification, but he never returned.

In the course of Defendant's attempt to cash the check, Ms. Marianne Allen, a loan officer for the bank, noticed the commotion at the tellers' windows and recognized Defendant, with whom she had had prior dealings on the preceding day, May 22, 1984. Defendant had come to the bank about a delinquent loan on which the bank was seeking payment. He had introduced himself to Ms. Allen as Alvin Tharpe. After Defendant left the bank on May 23, Ms. Allen found out that he had attempted to negotiate a Towne House Restaurant check payable to Aaron Dolberry. A short time

later, Ms. Redmon telephoned Aaron Dolberry at the Towne House Restaurant and informed him that someone had attempted to negotiate a Towne House payroll check payable to him. Mr. Dolberry then told Jackie Owens, the owner of the restaurant, that a Towne House check had been presented at the bank. Mr. Owens examined his checkbook and discovered checks missing from the middle of the checkbook.

The burglary at the Towne House Restaurant and the Defendant's attempt to negotiate a Towne House check were both reported to the police. Based in part on the identifications of Defendant by the bank employees, a warrant for Defendant's arrest was obtained on May 23, 1984, and Defendant was arrested shortly thereafter. On September 17, 1984, the Grand Jury returned a four count indictment charging Defendant with third degree burglary, petit larceny, receiving stolen property under the value of $200, and concealing stolen property under the value of $200. Trial was held on November 29, 1984, in the Henry County Circuit Court. Defendant was 20 years old at the time of trial; he is about six feet two or three inches tall and weighs over 200 pounds.

At trial, Mr. Owens testified that his employees discovered the burglary when they opened the restaurant on the morning of May 23, 1984. The employees notified him and he came to the restaurant to determine what had been taken. He did not discover that any checks were missing until Mr. Dolberry informed him that the bank had called about the attempted negotiation of a Towne House check by Defendant. None of the checks had been signed by Mr. Owens. He also stated that the exhaust fan through which entry had been gained is on a frame four feet by four feet but that, while the fan blades are sufficiently close together to prevent entry ordinarily, one of the blades had been broken off in a previous burglary, leaving a space of about 15 inches through which the burglar entered the restaurant. The fan is about five feet from the floor and a table is placed just beneath the fan; the burglar had stepped down onto the table as he entered. The police were called to investigate the burgla-

ry prior to the discovery of the missing checks.

Lieutenant Eddie Snow, an investigator with the Paris Police Department, testified that he was called to the Commercial Bank on the morning of May 23 to investigate the attempted negotiation of a Towne House payroll check by a person who the tellers believed was not the named payee. Lt. Snow did not perform the initial investigation of the burglary but he did go to the Towne House Restaurant to speak with Mr. Owens because no checks had been reported missing to the two investigating officers. Mr. Owens had discovered that the checks had been taken only after the bank notified Mr. Dolberry that someone had attempted to negotiate a check payable to him. Lt. Snow obtained descriptions and positive identifications from police photographs of Defendant from employees at the bank. No physical evidence, such as fingerprints, was preserved from the burglary of the Towne House. When Defendant was arrested, he had no checks from the Towne House in his possession. Subsequent to Defendant's arrest, other Towne House checks had been presented for negotiation in Paris by persons other than Defendant. Lt. Snow testified that no connection between these subsequently presented checks and Defendant had been discovered.

Another Paris Police Officer testified as well. While working the 11:00 p.m. to 7:00 a.m. patrol shift on May 22 and 23, 1984, Officer Keith Hopkins saw Defendant standing with an unidentified person in the parking lot of the Dairy Queen, which adjoins the parking lot of the Towne House Restaurant. He knows Defendant by sight. Officer Hopkins estimated the time at which he saw Defendant to have been about midnight. On the morning of May 23, he was one of two officers who investigated the burglary of the Towne House. He stated that entry was made through the broken blade in the exhaust fan at the rear of the building. He thought that only a fairly small person could get through the space between the blades. Although greasy tracks and fingerprints were discov-

ered, no prints were preserved from the scene.

Three bank employees also testified. Ms. Ford stated that shortly after opening on the morning of May 23, 1984, while she was working as a teller trainee, a $200 Towne House check, payable to Aaron Dolberry and purportedly signed by Mr. Owens, was presented to her by Defendant for negotiation. She knew Mr. Dolberry personally and asked Defendant to endorse the check; Defendant then signed Mr. Dolberry's name. Ms. Redmon was at the teller's window next to Ms. Ford's and, having overheard the conversation between Defendant and Ms. Ford and knowing Mr. Dolberry as well, she offered her assistance when Ms. Ford sought help with the transaction. Ms. Redmon called Defendant to her teller's window and requested identification. Defendant claimed to have his identification in his car and, taking the check, he left the bank and did not return. Ms. Redmon then telephoned Mr. Dolberry and the Paris Police Department. In addition, Ms. Allen testified that she noticed the situation as it developed at the tellers' windows and recognized Defendant from the previous day, May 22, when he had introduced himself to her with his actual name and had talked to her about the bank's pending loan collection suit against Defendant.

At the close of the State's evidence, Defendant made a Motion for Judgment of Acquittal on all counts. The trial court granted the Defendant's Motion as to counts one and two, third degree burglary and larceny. The Defendant then rested his case. The instructions given to the jury for submission on counts three and four, receiving or concealing stolen property under the value of $200, included an instruction on the use of circumstantial evidence to prove guilt. A verdict of guilty was returned by the jury on count three (receiving). On appeal, the Court of Criminal Appeals reversed Defendant's conviction, holding that the evidence was insufficient to sustain the conviction. Relying on *Deerfield v. State*, 220 Tenn. 546, 420 S.W.2d 649 (1967), the majority of the Court of Criminal Appeals found that the evidence did not show that Defendant had received the check from a third party. The dissent argued that the evidence was sufficient to permit the jury to conclude that Defendant had received stolen property from a third person:

> "These checks were stolen. The evidence does not show the defendant stole them. The evidence shows that he had the stolen check in his possession. If he didn't steal the check and he had it in his possession, it is obvious he had to receive it from someone. This is what the jury found and it is the only logical conclusion to be drawn from the evidence."

Judge Byers observed that in this case no evidence sufficiently indicated that Defendant was the thief, but the circumstantial evidence was sufficient to sustain the verdict. The dissent distinguished *Deerfield v. State, supra,* on its facts. We agree with Judge Byers.

■ A conviction based on circumstantial evidence is permitted in Tennessee. *See, e.g., State v. Duncan*, 698 S.W.2d 63, 67 (Tenn.1985); *State v. Brown*, 551 S.W.2d 329, 330 (Tenn.1977); *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn.1973); *Gossett v. State*, 224 Tenn. 374, 380, 455 S.W.2d 585, 588 (1970); *Peek v. State*, 213 Tenn. 323, 328, 375 S.W.2d 863, 865 (1964) (Overruled on other grounds); *Hardin v. State*, 210 Tenn. 116, 121, 355 S.W.2d 105, 107–108 (1962); *Farmer v. State*, 208 Tenn. 75, 78–79, 343 S.W.2d 895, 896 (1961); *Marie v. State*, 204 Tenn. 197, 203–204, 319 S.W.2d 86, 89 (1958); *Marable v. State*, 203 Tenn. 440, 451–452, 313 S.W.2d 451, 457 (1958); *Liakas v. State*, 199 Tenn. 298, 303, 286 S.W.2d 856, 858 (1956); *Cook v. State*, 84 Tenn. 461, 466, 1 S.W. 254, 256 (1886) (Overruled on other grounds). "Circumstantial evidence differs from direct evidence and consists of proof of collateral facts and circumstances from which the existence of the main fact may be deduced according to reason and common experience of mankind." *Bishop v. State*, 199 Tenn. 428, 430, 287 S.W.2d 49, 50 (1956). Moreover, "[c]ircumstantial evidence alone may be sufficient to convict one of a crime, if such evidence sufficiently proves all the

necessary elements. *Marable v. State, [supra]*. The weight of circumstantial evidence is for the jury to determine. *Williams v. State,* 520 S.W.2d 371 (Tenn. Cr.App.1974)." *State v. Coury,* 697 S.W.2d 373, 377 (Tenn.Cr.App.), *permission to appeal denied* (Tenn.1985). Nevertheless, "[a] verdict of a jury may not be based alone upon conjecture, guess, speculation or a mere possibility." *Sullivan v. State,* 513 S.W.2d 152, 154 (Tenn.Cr.App.), *cert. denied* (Tenn.1974) (citations omitted).

> "The law is firmly established in this State that to warrant a criminal conviction upon circumstantial evidence alone, the evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt, and it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that he is the one who committed the crime."

*Pruitt v. State,* 3 Tenn.Cr.App. 256, 267, 460 S.W.2d 385, 390, *cert. denied* (Tenn. 1970). "Absolute certainty of guilt is not demanded by the law to convict of a criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense." *Hardin v. State, supra,* 210 Tenn. at 122, 355 S.W.2d at 108.

> "Whether the conviction is based upon direct or circumstantial evidence, the standard for appellate review is the same. We will not reverse [the conviction] unless we find that 'the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.' Rule 13(e), T.R.A.P. We must view the evidence and all reasonable inferences therefrom in the light most favorable to the State. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978)."

*State v. Johnson,* 634 S.W.2d 670, 672 (Tenn.Cr.App.), *permission to appeal denied* (Tenn.1982).

The elements of receiving stolen property are: "(1) fraudulently receiving, (2) goods feloniously taken or stolen from another, (3) knowing such goods to have been so obtained, (4) with intent to deprive the owner thereof." *Meade v. State,* 530 S.W.2d 784, 786 (Tenn.Cr.App.), *cert. denied* (Tenn.1975) (citations omitted). A person who is the thief of property cannot be convicted of receiving stolen property. *See, e.g., Deerfield v. State, supra,* 220 Tenn. at 550, 420 S.W.2d at 651; *Parham v. State,* 78 Tenn. 498, 501 (1882); *State v. Cole,* 645 S.W.2d 417, 419 (Tenn.Cr.App. 1982). "For a defendant to be found guilty of receiving stolen property it is necessary to show that he received it from a third person...." *State v. Veach,* 224 Tenn. 412, 415, 456 S.W.2d 650, 651 (1970). *See also Whitwell v. State,* 520 S.W.2d 338, 344 (Tenn.1975); *Deerfield v. State, supra,* 220 Tenn. at 549, 420 S.W.2d at 651; *State v. Burse,* 600 S.W.2d 250, 251 (Tenn.Cr.App. 1979), *permission to appeal denied* (Tenn. 1980). The defendant must also know or have reason to know that the property is stolen; however, possession of recently stolen property permits but does not require the jury to draw the inferences both that the defendant knew the property was stolen, *see, e.g., State v. Hatchett,* 560 S.W.2d 627, 629 (Tenn.1978), and that the defendant received the property from a third person, if he himself is not the thief, *see, e.g., Gossett v. State, supra,* 224 Tenn. at 383, 455 S.W.2d at 589. *See also, e.g., Bush v. State,* 541 S.W.2d 391, 394 (Tenn.1976); *Lax v. State,* 214 Tenn. 162, 167, 378 S.W.2d 782, 785 (1964); *State v. Lawson,* 695 S.W.2d 202, 203 (Tenn.Cr.App.1985); *State v. Ratliff,* 673 S.W.2d 884, 885 (Tenn. Cr.App.), *permission to appeal denied* (Tenn.1984); *Meade v. State, supra,* at 786. *Taylor v. State,* 493 S.W.2d 477, 479 (Tenn. Cr.App.1972), *cert. denied* (Tenn.1973); *Nunley v. State,* 479 S.W.2d 836, 838 (Tenn.Cr.App.), *cert. denied* (Tenn.1972); *Myers v. State,* 4 Tenn.Cr.App. 314, 318–319, 470 S.W.2d 848, 850, *cert. denied* (Tenn.1971) (Cases in which guilty knowledge of stolen nature of property was inferred from possession of recently stolen property) *and Liakas v. State,* 199 Tenn. 549, 553, 288 S.W.2d 430, 432 (1956); *State v. Tilson,* 619 S.W.2d 544, 545 (Tenn.Cr. App.), *permission to appeal denied* (Tenn. 1981); *Duncan v. State,* 527 S.W.2d 150,

151 (Tenn.Crim.App.), *cert. denied* (Tenn. 1975); *Patmon v. State*, 524 S.W.2d 677, 678 (Tenn.Cr.App.1974), *cert. denied* (Tenn. 1975); *Taylor v. State, supra,* at 479 (Cases in which receipt of stolen property was inferred from possession of recently stolen property). *Cf. State v. Devitt*, 215 Tenn. 146, 150–151, 384 S.W.2d 26, 28–29 (1964) (No evidence whatsoever from which jury could draw any inference.).

■ The application of *Deerfield v. State, supra,* has proven to be somewhat problematic and this Court has on several occasions attempted to clarify the proper scope of this case. *See, e.g., Gossett v. State, supra; Tackett v. State,* 223 Tenn. 176, 443 S.W.2d 450 (1969). *Cf. Whitwell v. State, supra,* at 347 (Harbison, J., dissenting) (Distinguishing *Deerfield* on its facts). The facts and circumstances of each case involving receiving stolen property must be carefully considered to determine whether *Deerfield* should control. This Court has never held in any case that *Deerfield* means that the element of receiving stolen goods from a third party cannot be shown by circumstantial evidence. On the contrary, this Court and the Court of Criminal Appeals have upheld a number of convictions for receiving stolen property based on circumstantial evidence. In *Gossett v. State, supra,* the conviction was predicated entirely on circumstantial evidence:

> "This character of possession clearly warrants the inference ... that the Defendants knew the property had been placed [in the spot from which it was taken] even if they did not place it there themselves and they received it from the person who did place it there with guilty knowledge of its theft. Thus, it comes within the rule laid down in *Tackett v. State, supra.*"

224 Tenn. at 383, 455 S.W.2d at 588–589. *Gossett* distinguished *Deerfield* on its facts.

Furthermore, in *Tackett v. State, supra,* we emphasized that the sufficiency of circumstantial evidence must be cautiously examined to determine whether *Deerfield* should be applied. "Neither [*Deerfield* nor *Kessler v. State*, 220 Tenn. 82, 414 S.W.2d 115 (1967)] has any direct application to this case. Under the facts of this case another proposition is applicable, that the ... possession of goods quite recently stolen may warrant the inference they were illegally received...." 223 Tenn. at 179, 443 S.W.2d at 451. *Cf. Franklin v. State*, 202 Tenn. 666, 669, 308 S.W.2d 417, 419 (1957) ("There was no evidence whatever, *direct or circumstantial,* of the receipt of the [stolen property] by these men from a third party.") (Emphasis added). *Deerfield* clearly applies to circumstances in which the evidence shows that the defendant actually stole the property and thus could not have received it. *See, e.g., State v. Cole, supra; Taylor v. State, supra.* Since at least *Cook v. State, supra,* "[i]n cases of this kind, where the party is found in possession of stolen property, and the proof shows his possession to have been guilty possession, slight circumstances may authorize a jury to determine whether he has been guilty of the theft, or of receiving the property knowing it to have been stolen." 84 Tenn. at 466, 1 S.W. at 256. As we observed in *Bush v. State, supra,* "the evidence of possession is almost inevitably accompanied by facts that either increase or decrease the degree of probability" in such cases. 541 S.W.2d at 397.

We now examine what the evidence in this case shows. Considering that Defendant is apparently too large a person to have squeezed through the broken blade in the exhaust fan at the rear of the Towne House Restaurant, *cf. Kessler v. State, supra,* 220 Tenn. at 86, 414 S.W.2d at 116 (The defendant could not have been the thief because he could not have gained entry through the size of the hole by which the burglars entered), the evidence nevertheless demonstrates that Defendant had stolen property in his possession shortly after the burglary. *Cf. Meade v. State, supra,* at 786 ("[T]he evidence placed the defendant at the scene of the burglary very shortly before the crime took place and showed he had exclusive personal possession of property taken in the burglary soon after it occurred."). Defendant was seen with an unidentified person near the Towne

House Restaurant at a time proximate to the burglary. Further, the character of the stolen property in his possession, a payroll check, combined with Defendant's attempt to negotiate it fraudulently, shows that he not only received it with guilty knowledge that the check had likely been stolen, but also that he intended to deprive the owner of its possession by cashing it. Such attempted to deprive the owner of its possession by cashing it. Such attempted negotiation further shows that Defendant received the check for unlawful purposes. Moreover, the evidence additionally shows that other persons had attempted to negotiate stolen payroll checks from the Towne House burglary, that no connection between these other checks and Defendant had been discovered or shown, and that Defendant had no checks from this burglary in his possession when he was arrested. Although Defendant may have simply found the check, clearly, if Defendant could not have stolen the check from the Towne House Restaurant, he had to have obtained it somehow and the jury could infer from this evidence that he had received it from a third party. "The determination of whether all other reasonable theories are excluded by the evidence presented is primarily a question of fact for the decision of the jury." *State v. Coury, supra,* at 377 (citations omitted). *See also Pruitt v. State, supra,* at 267.

Accordingly, the evidence in this case, while circumstantial, is sufficient to support the jury's verdict. Every element of the crime with which Defendant was charged and for which the jury convicted him has been shown on this record. Viewing the evidence and drawing every inference in the light most favorable to the State, as required by *State v. Cabbage, supra,* the conviction must be reinstated. The jury was justified in drawing the inference from the evidence on this record that Defendant had received stolen property from a third person. This case is thus controlled by *Gossett, supra,* and *Tackett, supra,* and not by *Deerfield.*

We, therefore, reverse the judgment of the Court of Criminal Appeals and rein-

state the judgment of the trial court. The costs are taxed to the Defendant.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.