IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2001

## STATE OF TENNESSEE v. MARIO JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-09944     J. C. McLin, Judge**

---

### No. W2001-00898-CCA-R3-CD - Filed January 16, 2002

---

The Appellant, Mario Johnson, was convicted by a Shelby County jury for first-degree felony murder during the perpetration of a robbery and was sentenced to life imprisonment with parole. On appeal, Johnson argues that the evidence presented at trial was insufficient to support the verdict. After review, we find no error and affirm the judgment of the Shelby County Criminal Court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and DAVID H. WELLES, J., joined.

AC Wharton, Jr., Public Defender; Garland Erguden, Assistant Public Defender, Memphis, Tennessee.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham Johnson, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On the night of September 19, 1997, Pedroza Mays, Franklin "Beanie" Carter, Demetrius "Meady" Lay, and the Appellant drove to the Overlook Apartments in Frayser to "go holler at some females." The Appellant was driving the vehicle. After arriving at the apartments, they noticed someone standing just inside the complex. Mays described what took place next:

> [The Appellant] and [Carter] jumped out of the car. When they jumped out it seemed like they were chasing someone. And, when they jumped out, the car was still on, the doors were still opened. When they jumped out, they chased them like into, like

they chased someone to the back. And I heard someone say, lay down. And, that's when I heard a gunshot.

The Appellant and Carter soon returned to the vehicle. Mays noticed that the Appellant was carrying a sawed-off shotgun in his hand. Mays became frightened and began asking questions about what had just happened. The Appellant and Carter told Mays that they were trying to rob the fleeing male. Although they denied shooting the victim, they stated that they had shot the gun into the air. Several days later, Mays heard that a young male had been murdered at that particular location. Once contacted by law enforcement officers, Mays told police what had transpired that night.

While the Appellant was detained in jail pending trial, Michael Jackson, an inmate assigned to the same "pod," overheard a conversation between the Appellant and Mario Butler, another inmate. In that conversation, the Appellant told Butler that he had shot a young man during a robbery when the man began to run. In a subsequent conversation between Jackson and Butler, Butler told Jackson that the Appellant was referring to a murder which took place in Frayser.

Nikeesha Cunningham testified that she was Carter's girlfriend in September of 1997.[1] She recalled the Appellant telling Carter on the afternoon of September 19th that they were "going to make a stang," a term which is street slang for committing a robbery.

Dr. O. C. Smith performed an autopsy on the seventeen-year-old victim. Dr. Smith determined that the cause of death was a shotgun wound to the back which was consistent with the victim standing or running at the time he was shot. He further determined that the gun was fired directly at the victim and was fired from approximately seven yards away. Dr. Smith testified that death was not instantaneous but that the victim "lived for some time" after the wound was inflicted.

The Appellant did not testify at trial. Based upon the proof, the Appellant was convicted of first-degree felony murder.[2]

## I. Sufficiency of the Evidence

The Appellant argues that the evidence presented at trial establishing his identity as the perpetrator of the homicide is legally insufficient to support the guilty verdict. Specifically, the Appellant asserts that "no witness claimed to have seen [the] Appellant fire the gun." Although the Appellant concedes that there is evidence to support his conviction, he argues that the evidence does not rise to the required level of proof beyond a reasonable doubt.

---

[1] Shortly thereafter, Carter committed suicide when a law enforcement officer knocked on his door to question him about an unrelated case. The shotgun used by Carter to take his life was identified as the same shotgun used in the homicide of the victim in this case.

[2] The Appellant was indicted for both first-degree premeditated murder and first-degree felony murder. The jury returned verdicts of guilty on each count. The trial court merged the verdicts resulting in the single conviction of first-degree felony murder.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally State v. Adkins*, 786 S.W.2d 642, 646 (Tenn. 1990); *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S. Ct. 743 (1995); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992), *cert. denied*, 507 U.S. 954, 113 S. Ct. 1368 (1993).

Additionally, a crime may be established by circumstantial evidence alone. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987). However, before an accused may be convicted of a criminal offense based only upon circumstantial evidence, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn.1971). In other words, a conviction may not rest solely upon conjecture, guess, speculation, or a mere possibility. *Tharpe,* 726 S.W.2d at 900. Instead, a "web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances [the fact finder] could draw *no other reasonable inference* save the guilt of the defendant beyond a reasonable doubt." *State v. Sexton*, 917 S.W.2d 263, 265 (Tenn. Crim. App. 1995)(emphasis added).

The Appellant was convicted of felony murder during the perpetration of a robbery. Felony murder is defined as "the killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping . . . ." Tenn. Code Ann. § 39-13-202(a)(2). Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

In the present case, Mays testified that he was present on the night in question. Mays stated that the Appellant jumped out of the vehicle, along with Carter, and chased a young male. Mays further testified that he heard someone yell "lay down" and then heard a gunshot. Mays then watched as the Appellant returned to the car with a sawed-off shotgun in his hand. The Appellant admitted that his intention was to rob the victim and that he had fired the gun. Carter's girlfriend testified that she had overheard the Appellant planning to commit a robbery with Carter earlier that same day. Morever, inmate Jackson testified that he had previously overheard the Appellant admit that he had shot and killed a young male during a robbery when the young man fled. The testimony of Dr. Smith established that the victim died as a result of a gunshot wound to the back through the use of a shotgun. The medical examiner also testified that the marks on the body were consistent with someone who was standing or running at the time of the wound.

We find that the circumstantial evidence established at trial was such that a rational trier of fact could have drawn "no other reasonable inference save the guilt of the [Appellant] beyond a reasonable doubt." Accordingly, we conclude that the evidence presented at trial was sufficient to support the jury's verdict.

## CONCLUSION

After reviewing the evidence, in the light most favorable to the State, we find that the evidence presented at trial is sufficient to support the Appellant's conviction for felony murder during the perpetration of a robbery. The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, JUDGE