IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 10, 2004

## STATE OF TENNESSEE v. JOHN A. LEE

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-402-146     Timothy L. Easter, Judge**

**No. M2003-01801-CCA-R3-CD - Filed April 29, 2004**

The Defendant, John A. Lee, was convicted after a bench trial of one count of child abuse of a child under six years old, a Class D felony. The Defendant was subsequently sentenced to serve two years in the Department of Correction. The sole issue raised in this direct appeal is the sufficiency of the evidence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Eugene Honea, Franklin, Tennessee, for the appellant, John A. Lee.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Ron Davis, District Attorney General; and Sharon E. Guffee, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Lisa Briglio was living in Fairview, Tennessee, with the Defendant and his wife, Rose Lee, in January 2002. She testified that, on the night of January 17, 2002, she was awakened at about 1:30 in the morning by the sound of the Defendant's six-week-old infant crying. She went back to sleep, but was again awakened a short time later by another cry that she described as "terrified" and "painful." She got up to see what the matter was and saw the Defendant standing in the living room at the back of the couch. The baby was in the room with the Defendant, crying "like he was dying." Ms. Briglio asked the Defendant what was wrong with the baby, but the Defendant did not respond. Ms. Briglio asked twice more what the matter was, and the Defendant finally told her that he had laid the baby down on the couch and dozed off. He heard a "pop" and saw the baby's arm down in between the couch cushions. Ms. Briglio testified that the Defendant woke up his wife, and they decided they needed to take the baby to the hospital.

The Defendant and his wife drove the baby to Horizon Medical Center in Dickson, where the baby was determined to have a broken arm. Sgt. Jamie Ferrell of the Fairview Police Department responded to a call requesting an investigation of the circumstances surrounding the injury. Sgt. Ferrell testified that he viewed the baby at the hospital and noticed bruises on both of his upper arms. Sgt. Ferrell described the baby as very dirty with a bad diaper rash. Sgt. Ferrell spoke with the Defendant, who told him that he had been watching television on the couch with the baby lying beside him when he heard a "pop." The baby began crying. The Defendant theorized that the baby might have gotten his arm caught in the couch cushions and rolled over. Sgt. Ferrell testified that the Defendant then began crying and stated that he did not know what had happened.

Rose Lee, the Defendant's wife, testified that she was asleep when she was awakened by hearing the television remote control hit the coffee table. She then heard the baby cry. The Defendant came into her bedroom and told her that something was wrong with the baby's arm. She went to check on the baby and noticed that he was not moving his left arm and would not grab her finger. The Defendant told her that he had been watching televison when he heard a "pop," and when he looked over, the baby was crying. Ms. Lee testified that she had not seen any bruising on the baby's arms until they were at the hospital. Ms. Lee stated that she did not believe that the Defendant broke the baby's arm and that the Defendant had never hurt the baby before.

The hospital personnel in Dickson sent Ms. Lee and the baby to Vanderbilt Children's Hospital in Nashville. There, the baby was examined by Dr. Paul Hain. Dr. Hain testified that the baby's left humerus had been broken mid-shaft. Dr. Hain described the fracture as oblique and all the way through the bone, but there was no displacement of the two broken pieces. Dr. Hain explained that this type of fracture was generally caused by pressure applied in a twisting motion. Dr. Hain further explained that, at six weeks of age, an infant cannot roll over. Furthermore, a six-week-old infant's bones are stronger than his muscles, making it physically impossible to break his own bones.

Dr. Hain spoke with the Defendant, who told him that he thought the baby's arm had gotten between the couch cushions and that the baby had twisted his arm while asleep. Dr. Hain testified that the baby's arm would not have been broken under these circumstances. Dr. Hain stated that the bruising on the victim's upper arms was consistent with a twisting injury.

On cross-examination, Dr. Hain admitted that he did not know how the injury occurred or who inflicted it. He also admitted that it was theoretically possible that the injury had been caused by someone rolling over on the baby while the baby's arm was in the couch.

Det. Tom McCormick testified that he spoke with the Defendant and took the Defendant's statement. The Defendant explained to him that the baby's arm had gotten caught in the couch cushions, but he did not know what really happened because he was watching television. He heard a "pop" and the baby started screaming. The Defendant's impression was that the baby had been trying to roll over. Det. McCormick testified that his investigation indicated that the Defendant had been the only person with the baby at the time the injury occurred.

-2-

The Defendant testified that he did nothing to intentionally inflict the baby's injury. He insisted that the baby's arm had gotten caught between the couch cushions and that when he heard a "pop," the baby started crying. He stated that he subsequently pulled the baby's arm out from between the couch cushions.

The trial court found the Defendant guilty of one count of child abuse of a child under six years old, a Class D felony. See Tenn. Code Ann. § 39-15-401(a). The Defendant now contends that the trial court's verdict is not supported by sufficient evidence.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Our criminal code provides that

> Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury . . . commits a Class A misdemeanor; provided, however, that if the abused or neglected child is six (6) years of age or less, the penalty is a Class D felony.

Tenn. Code Ann. § 39-15-401(a). A person acts knowingly "with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Id. § 39-11-302(b). The Defendant contends that the evidence in this case

is entirely circumstantial, and that the proof must therefore "be not only consistent with the guilt of the accused but it must also be inconsistent with his innocence and must exclude every other reasonable theory or hypothesis except that of guilt." State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987) (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)). Additionally, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." Id. The Defendant argues that the proof is simply not sufficient to establish his identity as the perpetrator. However, this Court must keep in mind that the finder of fact decides the weight to be given circumstantial evidence and that "'[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the [fact finder].'" Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (citation omitted).

The proof is uncontroverted in this case that the Defendant and the baby were alone together at the time the baby's injury occurred. The Defendant offered an explanation for the baby's injury which the treating physician described as impossible. Dr. Hain testified that the general cause for such injuries was pressure applied in a twisting motion. Dr. Hain also described bruises to the baby's upper arms which were consistent with the application of such pressure. Dr. Hain described the injury as "non-accidental trauma."

The trial court expressed its reservations concerning the Defendant's credibility and clearly accredited the doctor's testimony over that of the Defendant's. In so doing, the trial court determined that the baby's injury was the result of non-accidental conduct. This proof, together with the uncontroverted evidence that the Defendant was alone with the baby when the injury occurred, supports the finding that the Defendant knowingly treated the baby in such a way as to inflict the injury. Thus, the evidence is sufficient to support the trial court's finding of guilt beyond a reasonable doubt.

The judgment of the trial court is affirmed.


_____
DAVID H. WELLES, JUDGE