**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT NASHVILLE**
**DECEMBER 1998 SESSION**

**FILED**

**March 9,1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | * | No. 01C01-9802-CR-00062 |
| APPELLEE, | * | Davidson County |
| VS. | * | Honorable Thomas H. Shriver, Judge |
| **TONY ARMSTRONG**, | * | (Sale of Cocaine) |
| APPELLANT. | * | |

For Appellant:

Dwight E. Scott
4024 Colorado Avenue
Nashville, TN  37209

For Appellee:

John Knox Walkup
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN  37243-0493

Daryl J. Brand
Senior Counsel
425 Fifth Avenue North
Nashville, TN  37243-0493

Erik W. Daab
Legal Assistant
425 Fifth Avenue North
Nashville, TN  37243-0493

Jon Seaborg
Assistant District Attorney General
Washington Square Building
222 2nd Avenue, North
Nashville, TN  37201

OPINION FILED: _____

AFFIRMED

NORMA MCGEE OGLE, JUDGE

**OPINION**

1

The appellant, Tony Armstrong, appeals as of right his conviction by a jury in the Criminal Court for Davidson County of the sale of less than .5 grams of cocaine, a Class C felony. The trial court sentenced the appellant as a standard, Range I offender to four years incarceration and suspended all but one year of the appellant's sentence. The sole issue on appeal is the sufficiency of the evidence adduced at trial to sustain the jury's verdict. Following a thorough review of the record, we affirm the judgment of the trial court.

## I. Factual Background

On November 2, 1995, a Davidson County grand jury indicted the appellant for selling less than .5 grams of cocaine on August 29, 1995. The trial court conducted the appellant's trial on August 26, 27, and 28, 1997. The State initially presented the testimony of Officer Anita Prather, an undercover police officer and a member of the Crime Suppression Unit of the Metropolitan Nashville Police Department. Officer Prather testified that, as an undercover police officer, she "purchase[d] drugs from street level dealers." She explained that, generally, her supervisor would select a location in Nashville where the Police Department had received numerous reports of drug-related activity. The undercover officers would then attempt to purchase drugs, including marijuana and cocaine, using "buy money" that had previously been photocopied in order to record the serial numbers on the bills. The undercover officers would remain in contact with their unit through radio transmitters. In this manner, they could relate the details of any ongoing transaction, including a description of the dealer and a description of the type and amount of drugs.

With respect to the appellant's offense, Officer Prather testified that, on the evening of August 29, 1995, she was working undercover in North Nashville with the

2

Crime Suppression Unit. She and another officer, Ernest Cecil, were driving an unmarked police car and wearing civilian clothing. They observed the appellant standing on a street corner, and stopped their vehicle in order to ask the appellant if he "knew where [they] could get some ready." Officer Prather explained at trial that "ready" is a slang term meaning crack cocaine. The appellant asked Officer Prather to park her car. He then walked across the street and spoke briefly with another man. Following this conversation, the appellant asked Officer Prather to drive her car around the corner and park. She then observed the man to whom the appellant had been speaking produce a small bottle, at which time the appellant and his companion approached two other gentlemen. Officer Prather testified that an exchange occurred between two of the appellant's companions, one of whom sold Officer Prather a rock of crack cocaine.

Following the sale, Officer Cecil communicated to other members of the Unit that the purchase had been completed and described the participants. At least six officers arrived at the location of the drug transaction and arrested the appellant and his companions. Officer Prather did not observe the arrest of the appellant. Rather, she and Officer Cecil began to complete the necessary paperwork, including marking any evidence recovered during the transaction and as a result of the arrests. Using a kit provided by the Police Department, the officers tested the rock of crack cocaine in order to confirm that it contained cocaine and then sent the evidence to the Tennessee Bureau of Investigation Crime Lab. At trial, Officer Prather positively identified the appellant as the individual who orchestrated the drug transaction.

The State also presented the testimony of Patty Choatie, a forensic scientist at the Tennessee Bureau of Investigation Crime Lab, specializing in drug chemistry.

She testified that the item purchased by Officer Prather weighed 0.05 grams. She also confirmed that the substance was, in fact, cocaine.

The State then called Officer Chris Taylor to the witness stand. He testified that, at the time of the instant offense, he was a member of the Crime Suppression Unit of the Metropolitan Nashville Police Department. Officer Taylor testified that, on August 29, 1995, pursuant to Officer Prather and Officer Cecil's description, he and Officer Dupree arrested the appellant. He searched the appellant's pockets and found the buy money in the right front pocket of the appellant's pants. Officer Taylor also positively identified the appellant at trial.

During cross-examination by the appellant's attorney and during the presentation of the appellant's case, Officer Taylor conceded that he had testified at a preliminary hearing on September 5, 1995, in the case of one of the participants in the drug transaction. However, he could not recall testifying at the hearing. He further conceded that he had stated at the preliminary hearing that he did not recover the buy money from Officer Prather's drug purchase. Again, however, he could not recall his testimony. Officer Taylor explained that, at the time of the appellant's arrest, he was participating in approximately seventy arrests each month and, as a member of the Crime Suppression Unit, had probably participated in as many as four hundred arrests prior to August 29, 1995. Additionally, he stated that, at the time of the September 5, 1995, preliminary hearing, he was testifying in as many as ten or twelve cases each day that he attended court. Since that time, he had participated in approximately two thousand cases. Officer Taylor submitted that his testimony at trial, that he had himself recovered the buy money, was based upon his review of Officer Prather's report, which was prepared immediately following the appellant's arrest. He remarked, "[W]ithout those reports, [the arrests] would all run

together really bad."

Finally, the State called Officer Lee Dupree. Officer Dupree was also a member of the Crime Suppression Unit at the time of the appellant's offense. On the evening in question, he assisted Officer Taylor in arresting the appellant. He confirmed that Officer Taylor searched the appellant and that Officer Taylor recovered the buy money from the right front pocket of the appellant's pants.

The appellant testified on his own behalf. He stated that on the evening of his arrest he was walking to a friend's house. Officer Prather approached him and asked whether or not he knew of a location where she could purchase drugs. He responded that she might be able to buy drugs "down the street." While Officer Prather drove further down the street, the appellant remained on the street corner, as he was, "you know, just hanging out." Accordingly, he observed an exchange between Officer Prather and several men with whom he was casually acquainted. Soon thereafter, according to the appellant, the police arrived and arrested these acquaintances. Because he was curious, the appellant walked down the street toward the scene of the arrests. At that time, several officers arrested him. The appellant stated that he did not attempt to flee from the police. He conceded, however, that he gave the police a false name and false information about his employment. He explained that he gave the police false information because he was "afraid and scared." He was particularly concerned that news of his arrest might reach his employers. The appellant denied selling cocaine to Officer Prather and denied that the police found the buy money in his possession.

## II. Analysis

The appellant contends that the evidence presented during his trial is

insufficient to prove his guilt beyond a reasonable doubt. In Tennessee, appellate courts accord considerable weight to the verdict of a jury in a criminal trial. In essence, a jury conviction removes the presumption of the defendant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense of sale of cocaine beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In the instant case, the appellant was convicted pursuant to Tenn. Code Ann. § 39-17-417(a)(3) (1995) of selling cocaine weighing less that .5 grams. The statute provides that the State must prove beyond a reasonable doubt the following essential elements: (1) the defendant sold cocaine; and (2) the defendant acted knowingly. Tenn. Code Ann. § 39-17-417(a)(3). The appellant correctly points out that it is undisputed that he neither directly delivered the cocaine to Officer Prather nor did he receive the buy money directly from the Officer. However, it is not necessary that a defendant personally engage in the actual transfer of drugs in exchange for money in order to be found guilty of the sale of cocaine. See State v.

Henning, No. 02C01-9404-CC-00079, 1994 WL 583311, at *2 (Tenn. Crim. App. at Jackson, October 26, 1994). In any event, the record reflects that the jury in this case was instructed on the theory of criminal responsibility for the conduct of another.[1] Tenn. Code Ann. §39-11-401 (1995) provides that " [a] person is criminally responsible as a party to an offense [ and may be charged with the commission of the offense] if the offense is committed by... the conduct of another for which the person is criminally responsible..." Tenn. Code Ann. § 39-11-402 (2) (1995) further provides that a person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense."

In State v. Greenwood, No. 01C01-9109-CR-00280, 1992 WL 50962, at *2 (Tenn. Crim. App. At Nashville, March 19, 1992) this court approved the application of the theory of criminal responsibility to the offense of selling cocaine for the purpose of charging and convicting parties to the drug transaction other than the actual source of the cocaine. See also State v. Porter, No. 02C01-9501-CC-00029, 1997 WL 399335, at *2 (Tenn. Crim. App. At Jackson, July 16, 1997) perm. To appeal granted, (Tenn. 1998). In this case, the evidence at trial, viewed in the light most favorable to the State, established that the appellant directed Officer Prather to a location where she could purchase cocaine; the appellant consulted with several acquaintances, one of whom delivered the cocaine to Officer Prather and directly

---

[1] The record does not include the jury instructions. However, in responding to a question by the jurors during the course of their deliberations, the judge re-read portions of the jury instructions, including an instruction on the theory of criminal responsibility for the conduct of another. We further note that, although the record does not reflect whether or not the State proceeded solely upon the theory of criminal responsibility for the conduct of another, there was no danger in this case of a "patchwork verdict" regarding the facts of the offense." Contrast State v. Prude, No. 02C01-9711-CR-00425, 1998 WL 467096, at * 4-5 (Tenn. Crim. App. at Jackson, August 12, 1998). At trial, the jury was presented with only one set of facts upon which it could base a finding of guilt.

received the buy money; and the appellant acquired possession of the buy money soon after the transaction. The State may prove a criminal offense by direct evidence, circumstantial evidence, or a combination of the two. State v. Tharpe, 726 S.W. 2d 896,899-900 (Tenn. 1987). Moreover, circumstantial evidence may establish the mental state required for the commission of the offense. State v. Rhodes, No. 02C01-9406-CC-00124, 1995 WL 425046, at *5 (Tenn. Crim. App. At Jackson, July 19, 1995). We conclude that the evidence in this case is sufficient to support the appellant's conviction.[2]

Nevertheless, the appellant argues in his brief that, "[b]ecause the testifying police officers provided contradictory, suspect, and unreliable testimony, the evidence was insufficient for a rational trier of fact to find beyond a reasonable doubt that the Defendant was guilty of sale of cocaine."

The appellant particularly focuses upon the contradictory testimony of Officer Taylor. As noted earlier, at the September 5, 1995, preliminary hearing, Officer Taylor testified that he had not personally recovered the buy money from Officer Prather's August 29, 1995, drug transaction. In contrast, at trial he testified that he personally searched the appellant and recovered the buy money. This court has previously held that "[i]t is a rule of law in Tennessee that contradictory statements by a witness in connection with the same fact cancel each other." State v. Matthews, 888 S.W. 2d 446,449-450 (Tenn. Crim. App. 1993). However, we further noted that this rule of law is only applicable when the inconsistency is unexplained and when neither version of the witness' testimony is corroborated by other evidence. Id. at

_____

[2]The Appellant argues that, at most, he was guilty of criminal responsibility for facilitation of a felony pursuant to Tenn. Code Ann. §39-11-403 (1995). However, this statue applies if the State is unable to establish the intent required for criminal responsibility. Id. at (a). Again, the State adduced sufficient evidence at trial to establish the requisite intent.

450. During the trial of the appellant, Officer Taylor explained that his extensive caseload could result in faulty recollection of events absent recourse to the police report. He also testified at trial that he had reviewed Officer Prather's report prior to the trial in order to refresh his memory. Additionally, his testimony at trial was corroborated by the testimony of Officer Dupree.[3]

"A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory." State v. Williams, 657 S.W. 2d 405, 410 (Tenn. 1983) The jury in this case chose to believe Officer Taylor's and Officer Dupree's testimony that the buy money was discovered in the appellant's pocket following the drug transaction. The appellant's possession of the buy money immediately following the sale, combined with his role in arranging the drug transaction, are sufficient facts upon which the jury could have based its verdict. We conclude that the evidence in the instant case supports the judgment of the trial court.

For the reasons stated above, we AFFIRM the judgment of the trial court.

_____
Norma McGee Ogle, Judge

CONCUR:

_____
John H.Peay, Judge

_____
Joseph M. Tipton, Judge

_____

[3]Contrary to the appellant's assertion in his brief, the record is devoid of evidence that the officers in this case "had a private agenda to convict the Defendant."