IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 26, 2002 Session

## STATE OF TENNESSEE v. EDWARD JACKSON THORPE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 232352    Rebecca J. Stern, Judge**

---

**No. E2001-00556-CCA-R3-CD**
**November 7, 2002**

---

The defendant, Edward Jackson Thorpe, was convicted by a jury of the offense of aggravated vehicular homicide and leaving the scene of an accident involving death. He received sentences of twenty-two year's incarceration and two year's incarceration, respectively. In this appeal he maintains that the evidence is insufficient to support the verdict. After a careful review of the record and the applicable law we must disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Bryan H. Hoss and C. Leland Davis, Chattanooga, Tennessee, for the appellant, Edward Jackson Thorpe.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; Bill Cox, District Attorney General; and Thomas Kimball, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Sometime between 9:30 p.m. on March 19, 2000 and 4:30 a.m. on March 20, Ms. Jennifer Turner was struck and killed by the defendant's Ford Ranger pick-up truck.[1] Police found headlight and grill pieces from a Ford at the scene of Ms. Turner's death. The next day police observed the defendant driving his truck with substantial damage to the right front headlight, grill assembly and hood. The defendant was arrested and advised of his constitutional rights whereupon he gave a statement. He told the officers that he had had "a couple" of beers before driving to Birchwood to his supervisor's home on the evening of March 19 and had several more beers with his supervisor

---

[1] The defendant never really contested that his truck was the vehicle that killed Ms. Turner. Rather his defense at trial was that his truck had been stolen, damaged in the hit and run and returned to his driveway.

while there. After unsuccessfully trying to visit his son, defendant stated that he stopped at a Golden Gallon and bought a hotdog. He stopped at another small store in the Hixson area and bought beer before driving home in a rain storm. Defendant stated that he had drunk "several other beers" after arriving at his home.

Defendant stated that he had no recollection of hitting anything that night and initially stated that he did not know how his truck had been damaged. Explaining that he had left his keys in the truck overnight, defendant speculated that someone had taken the truck and wrecked it before returning it to the driveway where he had parked it. Questioned about the likelihood that someone would steal a vehicle and return it to the owner's residence, defendant then said that someone must have backed into the truck while it was in the driveway. After police officers questioned whether defendant had seen any debris in his driveway, defendant acknowledged that he had not. When police stated that they had collected the debris at the scene of the crime that morning, defendant simply "hung his head" and seemed about to cry.

Sandy Deece, a clerk at the Falling Water Grocery, acknowledged that she had told Officer Steve Baker that defendant came to the grocery store on the evening of March 19 and bought beer.

A search warrant produced cell telephone records showing that defendant made several calls that evening to Tina Thorpe, his estranged wife. At 8:39 p.m., defendant called Ms. Thorpe from his cell telephone; at 8:44, defendant made another call to her from his cell telephone; at 10:19, defendant made a third call to her from his cell telephone; and at 10:33 defendant made a fourth call from the telephone in his residence. Ms. Thorpe explained that the defendant made the first telephone call at 8:39 to tell her he was on his way home after visiting his supervisor in Birchwood. In the second call, defendant told her he was lost; the third call advised her that he was close to arriving at his residence; and the fourth call stated that he was home and going to bed. Ms. Thorpe explained that defendant sounded as though he had been drinking heavily. As Ms. Thorpe watched defendant backing into his parking place, he ran into the garbage can at least twice.

On cross-examination, Ms. Thorpe testified that defendant blew his truck horn at 9:40 p.m. as he drove past her trailer. He routinely blew his truck horn to signal that he had returned home. Ms. Thorpe was able to remember the precise time because her son's bedtime was 9:30 and she had just told her son to go to bed. Ms. Thorpe stated that defendant's call from his cell telephone at 10:19 was made while he was in his truck parked in his driveway. Ms. Thorpe saw no damage to defendant's truck when he backed it in his driveway.

Ms. Thorpe testified that her 10-year-old son, Bryan Blakemore, had been up all that night and had run away to north Georgia for two or three weeks. According to Ms. Thorpe, when she confronted her son with suspicions that he had driven defendant's truck, he "got mad" and would not talk about it.

Defendant's supervisor, Alvin Lindsey, testified that defendant had driven to Lindsey's home in Birchwood sometime between 7:00 and 8:00 p.m. Lindsey stated that he and defendant discussed

some work-related matters for ten or fifteen minutes and that defendant did not appear to be intoxicated at that time.

## Sufficiency of the Evidence

The defendant maintains that the evidence of his guilt is insufficient because the evidence, which is wholly circumstantial, does not exclude every other reasonable hypothesis of guilt. For the following reasons we must disagree with this argument.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Of course, a criminal offense may be established exclusively by circumstantial evidence. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). However, the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded." Jones, 901 S.W.2d at 396; see also, e.g., Tharpe, 726 S.W.2d at 900.

We find that there is ample evidence from which the jury could conclude that there is no other reasonable explanation but that the defendant, while in an intoxicated state, struck Ms. Turner with his vehicle and then left the scene. The State's proof established beyond any doubt that defendant was drinking heavily on the night of March 19, 2000, and driving his truck in a pouring rain. Defendant's 8:39 call to Ms. Thorpe saying that he was on his way home is consistent with his supervisor's estimation that defendant came to the supervisor's home around 7:00 or 8:00 that evening. The undisputed evidence is that the victim was killed just a few blocks from the trailer park where defendant lived. Defendant's contradictory responses to police questioning the morning after the homicide were indicative of guilt. First, he stated he had no idea how the truck was damaged. Second, he theorized that someone had stolen, driven, and wrecked it after he had left the keys in the vehicle. Third, defendant posited that someone had backed into the truck during the night. When the officer pointed out that there had been no debris in his driveway, the defendant simply hung his

-3-

head in apparent emotional distress.  From this evidence a jury could have easily concluded that defendant was guilty as charged.

Conclusion

In light of the foregoing the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE