IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 8, 2007

# STATE OF TENNESSEE v. GERALD WELLS

**Appeal from the Criminal Court for Shelby County**
**No. 05-03901     Paul Skahan, Judge**

---

**No. W2006-02043-CCA-R3-CD  - Filed July 30, 2007**

---

Appellant, Gerald Wells, was indicted for one count of aggravated robbery.  After a jury trial, Appellant was convicted as charged.  The trial court sentenced Appellant as a Range II multiple offender to seventeen years for the conviction.  On appeal, Appellant challenges the sufficiency of the evidence.  Because the evidence was sufficient to support the conviction for aggravated robbery, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Tony N. Brayton, Memphis, Tennessee, for the appellant, Gerald Wells.

Robert E. Cooper, Jr., Attorney General & Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Anita Spinetta, Assistant District Attorney General,  for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In June of 2005, the Shelby County Grand Jury indicted Appellant for one count of aggravated robbery for his involvement in the June 5, 2004 robbery of a parking attendant at the Toyota Parking Center in downtown Memphis.

At trial, Samantha Williams testified that on June 5, 2004, she was a parking attendant for All Right Central Parking at the Toyota Central Garage on Third and Madison near the Redbird Stadium in Memphis. Around midnight, after Ms. Williams had just finished collecting cash from a car entering the garage, she turned around and encountered an African-American male standing by her booth. The man had a bandana covering the majority of his face. The man pointed a gun at her stomach and demanded money. Ms. Williams gave the man the money in her hand, which was approximately $200. After that, the man stated, "I'm not playing. I want all of it." At that time, Ms. Williams hit the no sale button on her cash register drawer to show the man that it was empty. The man grabbed the cash drawer and ran out of the garage.

Ms. Williams picked up the phone and immediately called her supervisor, Karl House, to report the robbery. Mr. House arrived on the scene in time to witness a blue or green car pulling away from the garage. Mr. House was able to get a partial reading on the license plate of the vehicle and called the police to notify them of the robbery.

The police arrived several minutes later to secure the scene. Ms. Williams described Appellant as an African-American man who was not "that tall". At the time of the robbery, Ms. Williams was in possession of approximately $275. While the police were speaking with Ms. Williams and investigating the scene, she learned that they were able to use the description of the car and the partial license plate number to apprehend Appellant, his co-defendant Dewayne Richardson, a cash drawer like the one stolen at the parking garage and approximately $220.

The police took Mr. House and Ms. Williams to the location where Appellant was apprehended. From about seventy feet away, Ms. Williams identified the co-defendant, Dewayne Richardson, as the robber. Ms. Williams later identified the co-defendant as the robber for a second time from a photograph. Sometime later, Ms. Williams was shown a photographic lineup that included Appellant. Ms. Williams did not identify anyone in the photographic lineup.

At trial however, Ms. Williams stated that she was mistaken in her identification of the co-defendant as the robber. Ms. Williams explained that after standing next to the co-defendant at the courthouse, she realized that he was not the man who robbed her. Ms. Williams stated that the man who robbed her was short and that Dewayne Richardson, the co-defendant, was tall. Ms. Williams also stated that she did not get a good look at the robber's face during the encounter. Ms. Williams remembered giving a statement to police on the night of the robbery, but explained that everything happened so quickly she did not have time to put things together. She stated that although she was unable to identify the person that robbed her, she was certain he was not the co-defendant.

Dewayne Richardson, the co-defendant, testified at trial. On the night of the robbery, he was at the bus station purchasing a ticket when he came into contact with Appellant. Mr. Richardson was driving his sister's green Intrepid, and Appellant asked for a ride to Bunker Hill then downtown to an area near Redbird Stadium. Mr. Richardson parked the car on the street near the stadium, and Appellant told him to wait in the car. Mr. Richardson claimed he had no idea that Appellant was going to commit a robbery.

According to Mr. Richardson, when Appellant returned to the car, he was carrying a cash register drawer. Mr. Richardson panicked and sped off in the car, running stop signs along the way. Mr. Richardson testified that he ran because he had only recently gotten out of jail and did not want another robbery charge on his record. Mr. Richardson acknowledged that he had three prior convictions for aggravated robbery and admitted that he pled guilty to being an accessory after the fact for the incident at the parking garage.

Officer Robert Strickland of the Memphis Police Department was on patrol in the downtown area of Memphis when he and his partner, Christopher Van Arsdale, noticed a green Dodge Intrepid run a stop sign. Officer Strickland pursued the car for several blocks before it came to a sudden stop in a parking lot off of Lauderdale. The occupants of the car exited the car and began to run away. Both Officer Strickland and Officer Van Arsdale were able to identify Appellant as the passenger of the car. Officer Strickland saw Appellant carrying a book-shaped object as he exited the car. Officer Strickland chased the driver, Mr. Richardson, on foot and later apprehended him. Officer Van Arsdale pursued and nabbed Appellant. Officer Van Arsdale testified at trial that Appellant ran for about fifty feet before he dropped something to the ground. There was money flying everywhere, and Officer Arsdale realized that the item Appellant dropped was a cash drawer.

Officer Keith Rogers of the Memphis Police Department responded to the scene after he heard a call for assistance with two robbery suspects in the Clayborne Homes area. When Officer Rogers arrived on the scene, he saw two patrol cars, the suspect's vehicle, money on the ground and a cash drawer. Officer Rogers worked to secure the scene.

At the conclusion of the proof, the jury found Appellant guilty of aggravated robbery. After a subsequent sentencing hearing, the trial court sentenced Appellant to seventeen years as a Range II multiple offender. Appellant sought relief in the form of a motion for new trial, which was denied by the trial court. Appellant timely appealed and now challenges the sufficiency of the convicting evidence.

*Analysis*

On appeal, Appellant challenges the sufficiency of the evidence. Specifically, Appellant contends that the proof does not exclude the possibility that Appellant found or came into possession of the items taken from the victim after the robbery. In other words, Appellant argues he was convicted based solely upon circumstantial evidence. The State, on the other hand, argues that the evidence was sufficient to support the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces

it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Appellant was convicted of one count of aggravated robbery. Pursuant to T.C.A. § 39-13-401, robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Aggravated robbery is robbery that is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402.

At the outset, we acknowledge that it is well-settled that the identification of a defendant as the perpetrator of the crime is a question of fact for the jury to determine. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Moreover, a criminal offense may be established exclusively by circumstantial evidence. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987); *State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). However, the trier of fact must be able to "determine from the proof that all other reasonable theories except that of guilt are excluded." *Jones*, 901 S.W.2d at 396; *see also, e.g., Tharpe*, 726 S.W.2d at 900.

Looking at the evidence in a light most favorable to the State, the proof at trial established that Mr. Richardson gave Appellant a ride on the date of the robbery to a location near Redbird Stadium. Appellant exited the car and came back a few minutes later with a cash drawer. Ms. Williams testified that while working at the Toyota Parking Garage, she was approached by a short, African-American man with a gun who was wearing a bandana over his face. The man took approximately $200 and her cash drawer. Ms. Williams stated that she was in shock when she saw the gun and was afraid Appellant would shoot her. Ms. Williams admitted that she previously misidentified Mr. Richardson as the robber, but she realized after standing closer to Mr. Richardson that he was much taller than the robber. Mr. House, the manager of the parking garage, saw the car pulling away from the parking garage after the robbery. He could see two people in the car and was able to get a portion of the license plate number. Several minutes later, Officers Strickland and Van Arsdale observed a car matching the description provided by Mr. House run a stop sign. The car fled at a high rate of speed before stopping in a parking lot. Appellant and Mr. Richardson exited the car and began to run on foot. Officer Van Arsdale pursued and caught Appellant, who dropped money and a cash drawer during the pursuit. After hearing the evidence, including the conflicting testimony

given by Ms. Williams as to the identity of the robber, the jury evaluated the evidence, weighed the credibility of the witnesses and found Appellant guilty of aggravated robbery. Based on the evidence submitted at trial, it was within the jury's purview to "determine from the proof that all other reasonable theories except that of guilt [of Appellant] are excluded." *Jones*, 901 S.W.2d at 396; *see also, e.g., Tharpe*, 726 S.W.2d at 900. Consequently, the evidence is sufficient to support Appellant's convictions. He is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE