IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 1, 2008

**STATE OF TENNESSEE v. ROBERT BONDS**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-00564     James C. Beasley, Jr., Judge**

**No. W2007-02771-CCA-R3-CD  - Filed September 5, 2008**

The defendant, Robert Bonds, was convicted of aggravated burglary, a Class C felony, and sentenced as a Range III offender to fifteen years in confinement. On appeal, the defendant argues that the evidence was insufficient to support his conviction. Following our review of the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which John Everett Williams and Alan E. Glenn, JJ., joined.

Garland Ergüden (on appeal), and Lawrence R. White (at trial), Assistant Public Defenders, Memphis, Tennessee, for the appellant, Robert Bonds.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pamela Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. BACKGROUND**

Serkenya Jenkins testified that on August 22, 2006, he was staying overnight with his two daughters at the home of his mother, Memphis Police Officer Angela Jenkins, when he was awakened at 2:30 a.m. by a loud "popping" noise from the sliding door on the back of the house. Mr. Jenkins sat up, but was unable to see anyone at the sliding glass door at the rear of the house. A moment later after he heard another loud pop, he got up and walked to the door. Mr. Jenkins stated that he saw the defendant's arm and shoulder blade come through the sliding glass door, but the defendant was unable to maneuver his upper body through the opening.

Mr. Jenkins testified that he grabbed the defendant's arm and the defendant quickly jerked away. He saw the defendant standing on the other side of the patio door briefly before the defendant

ran around the right rear side of the house. Mr. Jenkins woke his niece and told her to wake his mother and tell her that someone was trying to break into the house.

Mr. Jenkins testified that he ran out the front door and intercepted the defendant as he ran toward his car which was parked across the street from the Jenkins' house. According to Mr. Jenkins, the defendant was unable to get into the car. The defendant turned and ran west down the street. After briefly chasing him down the street, Mr. Jenkins was unable to catch the defendant so he returned to the house to check on his family.

Mr. Jenkins testified that approximately ten minutes later, three or four police patrol cars converged on his mother's house. The defendant was detained in the backseat of one of the patrol cars. Mr. Jenkins stated that he was able to gauge the defendant's height and size, but was unable to make out the defendant's facial features. He described the defendant as six-one, six-two, 220 or 230 pounds, with long braided hair and a "wave cap" which tightly covered his braided hair on his scalp. He testified that when the defendant was brought back to his mother's house in the patrol car, he was able to get a good look at the defendant's face. When police officers arrived at the scene with the defendant in custody, Mr. Jenkins observed that the defendant had the same physical characteristics as the individual who attempted to break into the house.

Mr. Jenkins testified that the lock on the sliding door on the patio had been snapped. He identified a photograph of the defendant's car which had been parked in front of his mother's house. He also identified a photograph of the knife found behind the house. He testified that he was familiar with the knives in his mother's house and was able to state with certainty that the knife recovered at the scene did not belong to his mother.

On cross-examination, Mr. Jenkins testified that he had been awake about eighteen hours before falling asleep. He stated that there were no lights on when the defendant broke into his mother's house, and it was difficult to see inside. According to Mr. Jenkins, he had been asleep for about two hours on a couch near the sliding glass door when the sound of the defendant's attempted entry woke him up. When he opened the front door, the defendant came running at an angle from the back of the house toward his car. Mr. Jenkins and the defendant reached the defendant's car door almost simultaneously, and the defendant was prevented from getting into his car and driving away. The defendant abandoned his car and ran off down the street. Mr. Jenkins chased him briefly before stopping and returning to his mother's house. Mr. Jenkins acknowledged that he did not see a knife in the defendant's hand. He stated that he only saw the knife after crime scene investigators discovered it at the scene. Mr. Jenkins further testified that when the defendant attempted to enter the house through the sliding door, he was able to see the defendant's face for a second or two. Later, he was able to positively identify the defendant to police when they brought him back to the house.

Officer Angela Jenkins testified that she lived at 1253 Old Hickory with her son and was at the house on August 22, 2006 with her son and three granddaughters. She woke up when her son yelled "Burglar!" and her granddaughter started screaming. She heard the front door open and slam shut and got up and ran toward the front door. When she got to the front door, she saw her son

coming back toward the house, and saw an African American male running westbound on Old Hickory, wearing what appeared to be a blue T-shirt and shorts.

Officer Jenkins testified that she had been a police officer for over twenty years. She stated that after seeing the defendant run down the street, she ran back in the house, dialed the police communications dispatcher, and gave a description of the suspect. She advised that the defendant appeared to be about six feet, six-one, about 200 plus pounds, wearing a blue T-shirt and shorts, possibly blue jeans. After calling in the defendant's description to the dispatcher, she called the description in again over her police radio. Officer Jenkins identified a photo of the broken lock on her sliding glass door and pointed to where the door had been forced off its track and hinge. Officer Jenkins stated that the knife found in the white plastic chair behind her house did not belong to her.

Officer Jenkins testified that it took three or four patrol cars less than ten minutes to arrive at her house. When police officers arrived, the defendant had already been apprehended and placed in the back of a patrol car. She stated that the general description of the clothing and appearance of the suspect that she gave over the radio to police officers matched the defendant's appearance. She also stated that the defendant had a similar stature and build as the suspect she saw running down the street.

On cross-examination, Officer Jenkins testified that she did not see the initial confrontation between her son and the defendant at the back door. She testified that after hearing the commotion, she ran out the front door and into the street where she was able to see the defendant running. She admitted that at the time she saw the defendant running down the street, she was unable to see his face. On re-direct examination, Officer Jenkins testified that when police officers brought the defendant back to her home, she observed that he was sweating profusely and seemed to be exhausted.

Officer Baris Beck testified that he was a police officer with the Memphis Police Department. While working the midnight shift, he received a call over the radio regarding a burglary at Officer Jenkins' home. He encountered the defendant, who alternated between running and moving at "an exaggerated pace." The defendant was sweating profusely, appeared very tired, and offered little resistance to Officer Beck. He placed the defendant into custody and returned with him to the scene of the crime. The defendant was positively identified as the individual responsible for the burglary. Officer Beck identified the location where he apprehended the defendant on a map, and stated that it was about a fourth of a mile from Officer Jenkins' home.

Officer David Payment testified that on August 22, 2006, he was working the midnight shift as a member of the Crime Scene Unit of the Memphis Police Department when he was called to respond to a crime scene at Officer Jenkins' home. He identified photographs he took at the crime scene of a white plastic chair on the back deck with a wooden-handled butcher knife sitting on it. Officer Payment was able to identify the knife and the defendant's vehicle from the crime scene. He confirmed that the knife did not match any of the knives in the Jenkins' home.

The defendant was convicted by the jury of aggravated burglary, a Class C felony, and sentenced as a Range III offender to fifteen years in confinement.

## II. ANALYSIS

On appeal, the defendant argues that the evidence was insufficient to sustain his conviction for aggravated burglary.

Upon review, we reiterate the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to the appellate court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict, approved by the trial judge, accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).

The defendant was convicted of aggravated burglary, which is defined as burglary of a habitation. *See* Tenn. Code Ann. § 39-14-403(a). Burglary is defined in relevant part as follows:

(a) A person commits burglary who, without the effective consent of the property owner:

(1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;

(2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;

(3) Enters a building and commits or attempts to commit a felony, theft or assault; or

(4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

(b) As used in this section, "enter" means:

4

(1) Intrusion of any part of the body; or

(2) Intrusion of any object in physical contact with the body or any object controlled by remote control, electronic or otherwise.

Tenn. Code Ann. § 39-14-402(a)-(b).

The guilt of the defendant, as well as any fact required to be proved, may be established by direct evidence, by circumstantial evidence, or by a combination thereof. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In fact, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987). However, the circumstantial evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971).

The defendant challenges the sufficiency of the evidence on the basis that Officer Jenkins and her son were unable to positively identify him as the burglar. From our review of the record, it appears that the jury was provided with sufficient direct and circumstantial evidence to find the defendant guilty of the charged offense beyond a reasonable doubt. In making the determination that the defendant was the burglar, the jury was able to evaluate and take into account the witnesses' descriptions and identifications of the defendant, the defendant's location in proximity to the scene of the crime when apprehended, as well as the defendant's sweaty and exhausted appearance. It is well-established that the identity of the defendant as the perpetrator of the offense for which he is being tried is a determination for the trier of fact. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Moreover, inconsistency, inaccuracy, and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the identification testimony. *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Furthermore, evidence was presented that the defendant "entered" the house by advancing his arm and shoulder through an opening created after he broke the lock and popped the glass sliding door off of its track. Jurors were also able to infer that the wooden-handled butcher's knife found at the back door belonged to the burglar. Because we do not replace the jury's inferences formed from the evidence with our own inferences, we will not disturb the jury's verdict. *See Reid*, 91 S.W.3d at 277. Therefore, the defendant is without relief as to this issue.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE