# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 1, 2005

## STATE OF TENNESSEE v. KEITH SALTER

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 01-04363, 01-04364    Chris Craft, Judge**

---

**No. W2004-01255-CCA-R3-CD  - Filed June 7, 2005**

---

Defendant, Keith Salter, was indicted in case No. 01-04363 on two counts of theft of property over $1,000 but less than $10,000, a Class D felony, and one count of felony evading arrest, a Class D felony.  Defendant was indicted in case No. 01-04364 on two counts of theft of property over $10,000 but less than $60,000, a Class C felony.  Following a jury trial, Defendant was found guilty in case No. 01-04363 of one count of theft of property over $1,000 and one count of felony evading arrest, and not guilty on the other felony theft charge.  Defendant was found guilty of both counts of felony theft in case No. 01-04364.  The trial court merged Defendant's conviction of felony theft in count two of case No. 01-04364 with his felony theft conviction in count one.  Defendant was sentenced as a career offender to twelve years for the felony theft conviction and twelve years for the felony evading arrest conviction in case No. 01-04363.  Defendant was sentenced as a persistent offender to fifteen years for the theft conviction in case No. 01-04364.  The trial court ordered Defendant's sentences in case No. 01-04363 to be served concurrently with each other but consecutively to his felony theft sentence in case No. 01-04364 for an effective sentence of twenty-seven years.  On appeal, Defendant argues (1) that the State failed to prove that the value of the truck supporting his theft conviction in case No. 01-04363 was over $10,000; (2) that the evidence was insufficient to establish his identity as the perpetrator of the offenses; and (3) that the length of his sentences is excessive.  After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender; and Tony N. Brayton, Assistant Public Defender, Memphis, Tennessee (on appeal) and William Gary Ball, Memphis, Tennessee (at trial) for the appellant, Keith Salter.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

Officer James Peterson with the Shelby County Sheriff's Department testified that on February 1, 2000, he checked the registration number of a white van with the name "Aerofoam" written on the side of the vehicle. He discovered that the van had been reported stolen, and he had the van towed. On February 7, 2000, at about 5:30 a.m., Officer Peterson spotted another white van with the "Aerofoam" logo traveling on Getwell Road in Shelby County. Officer Peterson followed the van for awhile because he knew that the business was not open at that time of the morning. He activated his emergency equipment at the intersection of Getwell Road and Holmes Road, but the driver of the van refused to stop.

Officer Peterson described the ensuing chase. The van's driver, who was later identified as Defendant, ran a red light at the intersection of Getwell Road and Holmes Road and again at the intersection of Getwell Road and Shelby Drive. The van nearly turned over as it exited onto Winchester Road, but Defendant was able to keep the vehicle under control. At one point, the vehicle turned onto a side road, hit some dirt, and was momentarily airborne. Defendant drove through a field until he reached the main road again, and entered Interstate 55 on the wrong side of the interstate. Defendant cut across the lanes of traffic on the interstate and exited on Shelby Drive. He drove eastbound on Shelby Drive through a residential area and turned west on Holmes Road. At one point, Defendant drove off of the road again and through a field. Defendant turned into the parking lot at Fairley High School. At this point, Officer Peterson dropped out of the chase.

Officer Peterson said that Defendant was the only person in the vehicle, although it was too dark to identify him while he was driving. Officer Peterson said that there were other cars on the road when Defendant ran the red lights and several cars on the interstate ramps. Officer Peterson spoke with employees at Tech Aerofoam Products, Inc., who verified that a white van was missing from the company's parking lot. The business was located about one and a half miles from the spot where Officer Peterson first saw the white van that was driven by Defendant.

Officer Peterson said that Defendant told him and other police officers that he was driving the van for someone else in exchange for twenty dollars and a rock of crack cocaine. Officer Peterson said that Defendant did not give a written statement.

Officer Louis T. Hall, Jr. caught up with Officer Peterson at the intersection of Holmes Road and Hudgins Road and assumed the lead position in the chase. He said that Defendant drove behind Fairley High School, struck a wire fence around a transformer, and turned onto Shelby Drive. Defendant then turned around and drove back to the high school. He tried to drive between two of

-2-

the school's buildings, but the top of the van became wedged against an overhead crosswalk. Officer Hall said that he saw Defendant running from the van and began to chase him. After thirty or forty feet, Officer Hall slowed down, and another police officer eventually tackled Defendant about fifty or sixty feet from the van and handcuffed him.

Officer Hall said that there were approximately 180 boxes of electrical equipment in the back of the van. The name "Cutler-Hammer, Inc." was written on the boxes. Officer Hall contacted representatives of the company who said that the items were not supposed to be transported in any vehicle other than those belonging to Cutler-Hammer, Inc.

On cross-examination, Officer Hall said that he could not see the driver's facial features during the chase, but he did notice that the driver was wearing a dark colored jacket. Officer Hall said that he did not actually see Defendant get out of the van. He said, however, that he saw a figure exiting the van, and then saw Defendant running about ten feet in front of the van. Officer Hall said that there was no one else on the school's property when Defendant was apprehended. Officer Hall confirmed that Defendant told the police officers he was driving the van in exchange for twenty dollars and a rock of crack cocaine. Officer Hall said that he did not know whether the van or its cargo was tested for fingerprints.

Travis Hendricks, the general manager of Tech Aerofoam Products, Inc., said that the company was a wholesale supplier of cabinet supplies and counter tops. Mr. Hendricks identified the vehicle driven by Defendant as the company's van, and he said that the van was stolen on February 1, 2000 and again on February 7, 2000. Mr. Hendricks said that the cost of the repairs from the damage to the van on February 7, 2000 was in excess of $9,000, and the insurance company did not "total" the vehicle. Mr. Hendricks said that the vehicle was a 1995 GMC van. The company's name and logo were printed on the sides of the van in fourteen inch letters. Mr. Hendricks confirmed that the company's business hours were between 7:30 a.m. and 4:30 p.m.

On cross-examination, Mr. Hendricks said that the van was not damaged the first time it was stolen. Mr. Hendricks conceded that the value of the van could possibly be under $10,000.

Steve Sprecher, the site manager of Cuttler-Hammer, Inc.'s facility in Memphis, said that the facility was a distribution center for the company's electrical products. He estimated that the value of the company's products that were discovered in the van was approximately $5,000. The items had been loaded on a company truck during the night of February 6, 2000, and were destined for shipment to Lincoln, Illinois. Mr. Sprecher confirmed that Defendant was not an employee of the company and did not have permission to take the company's products.

## II. Sufficiency of the Evidence

Defendant does not challenge his conviction for felony evading arrest. Defendant argues, however, that the evidence was insufficient to support the jury's finding that he was the driver of the van belonging to Tech Aerofoam Products, Inc. Defendant contends that no one identified him as

the driver while the vehicle was in motion, and no one saw him actually exit the vehicle at Fairley High School. In addition, the State did not offer any physical evidence that he was in the vehicle prior to the wreck.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The State must prove beyond a reasonable doubt that the accused is the person who committed the crime. *See State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). Identity of the accused may be proven through circumstantial evidence alone where the facts "'are so clearly interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone.'" *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002)(quoting *State v. Smith*, 868 S.W.2d 561, 569 (Tenn. 1993)). The determination of whether all reasonable theories are excluded by the circumstantial evidence presented is primarily a question of fact for the jury. *State v. Tharpe*, 726 S.W.2d 896, 900 (Tenn. 1987).

Officer Peterson testified that the driver was the only person in the van. Officer Hall admitted that he did not see Defendant exit the vehicle. He testified, however, that no one else was present at the site of the wreck. He saw a figure get out of the van, and then spotted Defendant running about ten feet in front of the van. Officer Hall pursued Defendant until Defendant was tackled by another police officer about fifty or sixty feet from the vehicle. Defendant admitted to both officers that he was the driver, and said that he was driving the van for money and drugs. Viewing the evidence in a light most favorable to the State, a reasonable trier of fact could conclude beyond a reasonable doubt that Defendant was the driver of the stolen van. Defendant is not entitled to relief on this issue.

Alternatively, Defendant argues that the evidence is insufficient to support the jury's finding that the value of the van belonging to Tech Aerofoam Products, Inc., was over $10,000. Defendant contends, therefore, that his Class C theft conviction in case no. 01-04364 should be reduced to a Class D felony.

-4-

A person commits theft if the person knowingly obtains or exercises control over the property of another without the owner's effective consent and with the intent to deprive the owner of his or her property. Tenn. Code Ann. § 39-14-103. Theft of property is a Class D felony if the value of the stolen property is between $1,000 and $10,000, and a Class C felony if the value of the stolen property is between $10,000 and $60,000. "Value" is defined as "(i) The fair market value of the property or service at the time and place of the offense; or (ii) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Tenn. Code Ann. §§ 39-11-106(a)(36)(A)(i) and (ii). The determination of fair market value is a jury question based on the evidence presented at trial. *State v. Hamm*, 611 S.W.2d 826, 828-829 (Tenn. 1981).

Mr. Hendricks testified, "I would have to say [the approximately value of the van] was over $10,000." He testified that the repairs to the van after Defendant's wreck cost more than $9,000. He also testified, without objection, that he based his opinion of the value upon the fact that the insurance company did not "total" the vehicle as a result of the damage it sustained. Mr. Hendricks said that the van was a 1995 model. At the time of the offenses, then, the van was approximately five years old. Mr. Hendricks said that the van resembled a U-Haul truck with a cab in front and a box in the back that was seven feet high and fourteen feet long. The vehicle was repaired and returned to the company.

Defendant points out that Mr. Hendricks stated in cross-examination that the value of the van might possibly be less than $10,000. Any conflicts, however, are presumed to have been resolved by the jury in favor of the State. *Sheffield,* 676 S.W.2d at 547. Given the information presented, the evidence was sufficient for the jury to determine that the value of the property taken was more than $10,000 but less than $60,000. Defendant is not entitled to relief on this issue.

## III. Sentencing Issues

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the

defendant's potential for rehabilitation or treatment. *Id.* §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

A persistent offender is sentenced within the applicable Range III, or between ten and fifteen years for a Class C felony. *Id.* §§ 40-35-108(c) and 40-35-112(c)(3). In calculating the sentence for a Class C felony conviction, the presumptive sentence is the minimum of the range, or ten years if there are no enhancement or mitigating factors. *Id.* § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum of the range, but still within the range. *Id.* § 40-35-201(d). If both enhancing and mitigating factors are present, the trial court must start at the minimum of the range, enhance the sentence within the range as appropriate for the enhancing factors, and then reduce the sentence as appropriate for the mitigating factors. *Id.* § 40-35-210(e). If there are mitigating but no enhancement factors present, then the trial court may set the sentence either at the minimum of the sentencing range, or below the midpoint.

At the sentencing hearing, Demetria Copperidge, the principal court clerk for the Shelby County Criminal Court, testified. Ms. Copperidge said that one of her duties is to maintain the court's records. Ms. Copperidge stated that according to the trial court's records Defendant was convicted of nine Class E felonies, four Class D felonies and three Class C felonies between 1989 and 1996. Seven of the Class E felonies occurred on the same day, and the trial court considered these offenses as one offense for purposes of determining Defendant's sentencing range. *See* Tenn. Code Ann. §§ 40-35-107(b)(4) and 40-35-108(b)(4). Based on Defendant's prior criminal record, the trial court sentenced Defendant as a persistent offender on his Class C felony theft conviction in case No. 01-04364, and as a career offender for his Class D felony theft and felony evading arrest convictions in case No. 01-04363. *See id.* §§ 40-35-107(a)(1) and 40-35-108(a)(3).

The mandatory sentence for a career offender is the maximum sentence within the applicable Range III, or twelve years for a Class D felony. *Id.* §§ 40-35-108(c) and 40-35-112(c)(4). The trial court accordingly sentenced Defendant as a career offender to twelve years for each of his Class D felony convictions, and Defendant does not challenge the length of these sentences.

A. Length of Sentences

Defendant's sole challenge on appeal to the length of his sentence for his Class C felony theft conviction in case No. 04364 is based on the recent United States Supreme Court decision in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). Relying on *Blakely*, Defendant argues that the trial court's failure to submit the determination of the applicability of enhancement factors to a jury violated his Sixth Amendment right to trial by jury. *See Blakely*, 124 S. Ct. at 2536. Our Supreme Court, however, has recently concluded that Tennessee's sentencing scheme does not violate a defendant's right to trial by jury under *Blakely*. *State v. Edwin Gomez and Jonathan S. Londono,* ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *27 (Tenn. Apr. 15, 2005). Accordingly, Defendant's reliance on *Blakely* is misplaced. Defendant is not entitled to relief on this issue.

## B. Consecutive Sentencing

Defendant also seeks review of the trial court's imposition of consecutive sentences under *Blakely*. The trial court ordered Defendant's sentences in case No. 01-04363 to be served consecutively to his sentence in case No. 01-04364 based on its findings that Defendant was a professional criminal, that he had an extensive criminal history, and that he was a dangerous offender. Even before the Supreme Court's opinion in *Gomez*, this Court has consistently held that *Blakely* does not impact a trial court's order of consecutive sentencing. *See State v. Lawrence Warren Pierce*, No. M2003-01924-CCA-R3-CD, 2004 WL 2533794, at *13 (Tenn. Crim. App., Nashville, Nov. 9, 2004), *perm. to appeal denied* (Tenn. Feb. 28, 2005); *State v. Michael L. Wallace*, No. E2003-01719-CCA-R3-CD, 2004 WL 2671619, at * 7 (Tenn. Crim. App., Knoxville, Nov. 23, 2004), *application for perm. to appeal filed. See also State v. Gregory Robinson*, 146 S.W.3d 469, 499 n.14 (Tenn. 2004)(citations omitted)("[S]everal courts have rejected [this] contention and held that *Blakely* and *Apprendi* do not apply to the decision to impose consecutive sentences.") Defendant's reliance on *Blakely* is thus misplaced.

Although Defendant does not otherwise challenge the propriety of consecutive sentencing, we find that the evidence does not support a finding that Defendant is a professional criminal who knowingly devoted his life to criminal acts as a major source of his livelihood for the purposes of consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(1). The trial court based its finding on Defendant's employment record which showed that Defendant worked for two restaurants for short periods of time in 1990 and 1995, and then as a laborer in his family's construction business between 1998 and 2002. There is no evidence in the record reflecting the amount of money Defendant derived from his criminal offenses or that he used that income, if any, to support himself. *See State v. Desirey*, 909 S.W.2d 20 (Tenn. Crim. App. 1995). Because the State failed to prove that Defendant's criminal acts provided a major source of his livelihood, we find consideration of this factor was inappropriate.

The record does support, however, the trial court's findings that Defendant has an extensive criminal history. *See* Tenn. Crim. App. § 40-35-115(b)(2). The record reflects that Defendant has twenty prior misdemeanor and felony convictions ranging from traffic violations to robbery and drug offenses. Moreover, the number of Defendant's prior convictions exceeded the number of convictions required to sentence him as a Range III offender. The record supports the trial court's finding that Defendant's record of criminal activity is extensive.

In addition, the record supports the trial court's finding that Defendant is a dangerous offender who's behavior indicates little or no regard for human life. *Id*. § 40-35-115(b)(4). The trial court based its determination of Defendant's dangerous offender status on the circumstances surrounding his theft and evading arrest offenses, and the extensiveness of his criminal background which indicated Defendant's unwillingness to comply with the laws of the State. The record supports the conclusion that the aggregate sentence is necessary to protect society from Defendant's

conduct, and consecutive sentencing is reasonably related to the severity of the offenses. Tenn. Code Ann. §§ 40-35-102(1) and -103(1)(A); *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995); *Gray v. State*, 538 S.W.2d 391 (Tenn. 1976).

Based upon the foregoing, we find that the imposition of consecutive sentencing is appropriate. Defendant is not entitled to relief on this issue.

## CONCLUSION

Based upon a thorough review of the record, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE