**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**MARCH SESSION, 1998**

**FILED**

**July 1, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**



| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9705-CC-00170** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **CARROLL COUNTY** |
| **VS.** | ) | |
| | ) | **HON. C. CREED MCGINLEY** |
| **ANTWAIN LAMAN SPEARS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal)** |

FOR THE APPELLANT:

RAYMOND L. IVEY
P. O. Box 229
Huntingdon, TN 38344

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH T. RYAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

ROBERT RADFORD
District Attorney General

ELEANOR CAHILL
Assistant District Attorney
P. O. Box 686
Huntingdon, TN 38344

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# **OPINION**

Appellant Antwain Laman Spears was indicted on May 6, 1996 by the Carroll County Grand Jury for possession of cocaine with intent to sell or deliver, possession of marijuana with intent to sell or deliver, and possession of unlawful drug paraphernalia. Concluding that Appellant lacked standing to contest the search warrant, on June 25, 1996, the trial court denied Appellant's motion to suppress the evidence seized pursuant to a search warrant, which had been executed at the residence of Margo Taylor. Moreover, the court determined that even if Appellant had standing, the search warrant appeared to be valid on its face. Appellant was convicted on September 16, 1996, by a jury in the Carroll County Circuit Court of possession of cocaine and marijuana with intent to sell or deliver and possession of unlawful drug paraphernalia. The jury fined Appellant $15,000.00 for cocaine possession, $2,500.00 for marijuana possession, and $750.00 for possession of drug paraphernalia. As a Range II multiple offender, Appellant was sentenced to concurrent sentences of fifteen years incarceration with the Tennessee Department of Correction, three years, and eleven months and twenty-nine days, respectively. The trial court also revoked Appellant's probation resulting from a prior conviction. Appellant presents three issues for our consideration on this direct appeal: (1) whether the trial court erred in concluding that Appellant lacked standing to challenge the search of Margo Taylor's residence; (2) whether the trial court improperly denied Appellant's motion to suppress the evidence seized during execution of the search warrant; and (3) whether the evidence was sufficient to sustain Appellant's convictions for possession of cocaine and marijuana with intent to sell or deliver and possession of drug paraphernalia.

After a review of the record, we affirm the judgment of the trial court.

# I. FACTUAL BACKGROUND

The proof shows that on February 23, 1996, Deputy Lester McCaleb executed a search warrant at 42 Cherry Blossom Drive, a duplex in Huntingdon, Carroll County. At this time, Ms. Margo Taylor leased the duplex. The search warrant was for cocaine and drug paraphernalia seen in the residence by a confidential informant.

At the suppression hearing, Appellant testified that he did not reside at the Cherry Blossom Drive address. He stated that he had purchased a bedroom suite and needed a place to store it until he obtained a place to rent. Appellant also stored some of his clothing at Ms. Taylor's residence, as he was in the process of moving from one place to another. At the suppression hearing, Appellant testified that he spent only two consecutive nights[1] at the Taylor residence. Moreover, he stated that he never signed either a lease or a rental agreement. Finally, Appellant admitted that although the bedroom door had a privacy lock, he never used it.

Ms. Margo Taylor testified at the suppression hearing that she signed the lease to the duplex with Marshanna[2] Barnhill. However, Mr. Barnhill vacated the premises around the middle of January 1996. In the middle of February, Appellant moved his clothes and bedroom suite into the duplex. Ms. Taylor testified that Appellant kept his belongings at her residence only with her permission.

At Appellant's trial, Deputy Lester McCaleb testified that no one was at home when he arrived to execute the search warrant. Approximately thirty minutes later, however, Mr. Harold Miller, the landlord, arrived. After procuring

---

[1] At trial, however, Appellant testified that he stayed only one night at the Taylor residence.

[2] At trial, Mr. Barnhill's first name is said to be "Marcan."

a key to the front door, Mr. Miller authorized Deputy McCaleb and Sergeant Randal Dunn to enter the duplex. During Mr. Miller's absence, Appellant approached the area. Deputy McCaleb testified that Appellant seemed nervous and also appeared to Deputy McCaleb as though he was attempting to avoid the officers. Deputy McCaleb then served Appellant with the search warrant.

Sergeant Dunn testified that once inside, he and his drug dog proceeded to search the home. The dog alerted on the rear bedroom. The door to the bedroom was locked from the inside, and Mr. Miller opened it by using a coat hanger. Upon entering the room, the dog indicated on Appellant's dresser and the headboard of his waterbed.

Deputy McCaleb searched the room and found inside a dresser a box of plastic baggies and a cigar box containing a pack of rolling papers. Additionally, McCaleb's search revealed a brown paper bag located under a baseball cap which sat on the headboard of the bed. Inside the bag, Deputy McCaleb discovered two loose bags of crack cocaine, a film canister containing one small bag of crack cocaine, and two bags of marijuana.

Sandra Romanek, a special agent forensic scientist with the Tennessee Bureau of Investigation, tested the items found both in the dresser and on the headboard. Her analysis disclosed the items to be 13.9 grams of cocaine base and 27.4 grams of marijuana.

Margo Taylor testified that she and Marcan Barnhill rented the duplex from Harold and Barbara Miller. Barnhill and Ms. Taylor lived together until the middle of January 1996. During the middle of February, Appellant moved some furniture and clothes into the room formerly occupied by Mr. Barnhill. Some of Mr. Barnhill's clothes remained in the bedroom closet even after he had left.

According to Ms. Taylor's testimony, Appellant spent only one and one-half nights in the duplex, had no key, and paid no rent.

Tracy Willis, Appellant's former girlfriend, testified that Appellant resided with her from December 1995 until April 1996. Willis stated that Appellant maintained all of his personal items, i.e., furniture, clothes, shoes, and toiletries, at her house. Willis was aware that Appellant had purchased a bedroom suite and that he had stored it at Ms. Taylor's house.

At his trial, Appellant testified that he was living with Ms. Willis at the time the search warrant was executed. He explained that he stored his recently purchased bedroom suite at Ms. Taylor's residence because he had no room for it at Ms. Willis' home and was attempting to locate a place for himself and his daughter. Appellant disclaimed any knowledge of the drugs that were found on the dresser and headboard but admitted that some of the baseball caps found on the headboard belonged to him. Appellant confirmed that he neither possessed a key to the duplex nor paid rent to Ms. Taylor.

## II. STANDING

Appellant's first contention on this direct appeal is that the trial court erroneously concluded that he lacked standing to challenge the search of Margo Taylor's residence. We disagree.

The Fourth Amendment to the United States Constitution provides, "The rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause. . . ." U.S. Const. amend 4. Similarly, Article I, § 7 of the Tennessee Constitution guarantees, "That the

people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures. . . ." Tenn. Const. art. I, § 7.

The trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Woods, 806 S.W.2d 205, 208 (Tenn. Crim. App. 1990); State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981). It is axiomatic that "One who challenges the reasonableness of a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place where property is searched." State v. Oody, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) (citing Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)). This Court has held that an individual may have a legitimate expectation of privacy even where the property belonged to another. Oody, 823 S.W.2d 554, 560; State v. Turnbill, 640 S.W.2d 40, 45 (Tenn. Crim. App. 1982).

In United States v. Haydel, the United States Court of Appeals for the Fifth Circuit articulated a seven-factor analysis applicable to the standing inquiry. 649 F.2d 1152 (5th Cir. 1981). This Court has adopted and employed the Haydel factors in numerous cases. See, e.g., Oody, 823 S.W.2d 554, 560; Woods, 806 S.W.2d 205, 208; Turnbill, 640 S.W.2d 40, 46.

We now address ourselves to the task of applying the seven factors enunciated in the Haydel decision to the case at bar. These seven Haydel factors are the following: (1) property ownership; (2) whether the defendant has a possessory interest in the property seized; (3) whether the defendant has a possessory interest in the place searched; (4) whether the defendant has "a right to exclude others from that place"; (5) whether the defendant has "exhibited a subjective expectation that it would remain free from governmental invasion"; (6) whether the defendant "took normal precautions to maintain his privacy"; and (7)

whether the defendant was "legitimately on the premises." <u>Haydel</u>, 649 F.2d 1152, 1154-55. First, Harold Miller, not Appellant, owned the duplex located at 42 Cherry Blossom Drive. Second, Appellant disclaimed any knowledge of the marijuana and cocaine that were found in the bedroom on the headboard. Appellant denied having a possessory interest in the baseball caps which concealed the drugs. However, Appellant admitted owning two of the hats on the headboard. Third, Appellant had no possessory interest in the place searched. At the suppression hearing, Appellant admitted that he never signed a lease. At trial, Appellant testified that he paid no rent to Ms. Taylor for the use of the bedroom and that she did not give him a key to the residence. Fourth, Appellant confirmed that he did not reside at the Cherry Blossom address when the search warrant was executed. Moreover, Ms. Taylor testified at the suppression hearing that Appellant stored his possessions in the bedroom only with her permission. As Appellant was not a co-tenant of Ms. Taylor's, kept his possessions at her residence only by her permission, and spent only a couple of nights in the duplex, it seems obvious that he did not have the right to exclude others. Fifth, Appellant testified at the suppression hearing that he never locked the bedroom door in which his possessions were stored. Although the door was locked when the police arrived to search the residence, Appellant stated that he had not locked it. Therefore, Appellant apparently had no subjective expectation that the bedroom would remain free from governmental invasion. Sixth, Appellant did not take normal precautions to maintain his privacy, such as ensuring that the bedroom door remained locked in his absence. As previously stated, Appellant testified that he never used the lock on the bedroom door. Finally, it appears that Appellant was legitimately on the premises because Ms. Margo Taylor granted him permission to store his belongings in the bedroom.

In weighing the <u>Haydel</u> factors, we conclude that it is fairly obvious that Appellant lacked standing to challenge the validity of the search.

### III. SUFFICIENCY OF AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Appellant next complains that in the affidavit in support of the search warrant, the affiant made knowing misrepresentations of fact. Specifically, Appellant alleges that the affiant made an intentional, if not reckless, statement to establish probable cause by referring to the premises as those of Appellant when they did not belong to him. We disagree.

The affidavit in support of the search warrant refers to the premises to be searched as those of Antwain Spears. Appellant contends that without this statement, probable cause would not have existed.

The trial court's findings of fact in a hearing on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. <u>Turnbill</u>, 640 S.W.2d 40, 45-46. In the present case, the trial court did not find "any false statements or statements that were made with reckless disregard such as to invalidate the search in question." The court also concluded that the search warrant was valid both in the issuance and in the execution.

To buttress his argument, Appellant relies upon Deputy McCaleb's trial testimony that he consulted the 911 computer listing directory for Carroll County which showed the Cherry Blossom residence to be under the name of Ms. Margo Taylor. However, this evidence was not before the trial court at the suppression hearing.

In <u>State v. Little</u>, the Tennessee Supreme Court stated that "the law is settled that a fraudulent misrepresentation of a material fact will invalidate a search warrant." 560 S.W.2d 403, 406 (Tenn. 1978). An affidavit that is

sufficient on its face may be impeached in two circumstances: "(1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, recklessly made." Id. at 407. Neither of these two circumstances is present in the instant case. The search warrant is valid.

## IV. SUFFICIENCY OF THE EVIDENCE

Appellant's final contention is that because the evidence in this case was entirely circumstantial, it is insufficient to sustain his convictions for possession of cocaine with intent to sell or deliver, possession of marijuana with intent to sell or deliver, and possession of unlawful drug paraphernalia. We disagree.

We begin by observing that Appellant does not strengthen his argument by contending that the evidence is insufficient because it is circumstantial in nature. Tennessee law permits convictions based upon circumstantial evidence. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987). Additionally, both direct and circumstantial evidence were presented at Appellant's trial.

This Court is obliged to review challenges to the sufficiency of the convicting evidence according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest

legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d 776, 779. Finally, TENN. R. APP. P. 13(e) provides, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." See also Matthews, 805 S.W.2d 776, 780.

Tenn. Code Ann. § 39-17-417 provides in pertinent part:

> (a) It is an offense for a defendant to knowingly:
> (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.
> (c) A violation of subsection (a) with respect to:
> (1) Cocaine is a Class B felony if the amount involved is point five (.5) grams or more of any substance containing cocaine and, in addition thereto, may be fined not more than one hundred thousand dollars ($100,000).
> (g)(1) A violation of subsection (a) with respect to a Schedule VI controlled substance classified as marijuana containing not less than one-half (1/2) ounce (14.175 grams) nor more than ten pounds (10 lbs.) (4535 grams) of marijuana, or a Schedule VI controlled substance defined as a non-leafy, resinous material containing tetrahydrocannabinol (hashish),

containing not more than two pounds (2 lbs.) (905 grams) of hashish is a Class E felony and, in addition thereto, may be fined not more than five thousand dollars ($5,000).

Tenn. Code Ann. § 39-17-417.

Tenn. Code Ann. § 39-17-419 permits the jury to infer "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419.

Tenn. Code Ann. § 39-17-425(a)(1) provides:

(a)(1) Except when used or possessed with the intent to use by a person authorized by this part and title 53, chapter 11, parts 3 and 4 to dispense, prescribe, manufacture or possess a controlled substance, it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to. . . pack. . ., store. . ., inhale, or otherwise introduce into the human body a controlled substance in violation of this part.

Tenn. Code Ann. § 39-17-425(a)(1).

The State was required to prove each and every element of the charged offenses beyond a reasonable doubt.

Respecting Appellant's convictions for possession of cocaine and marijuana with intent to sell or deliver, the drug dog indicated on Appellant's dresser and on the headboard of his waterbed. Deputy McCaleb testified that he found crack cocaine and marijuana underneath a baseball hat which lay on the headboard of the waterbed. Inside a brown paper bag was a Crown Royal bag containing two loose bags of crack cocaine and a film canister with another small bag of cocaine. Deputy McCaleb also discovered two bags of marijuana inside the Crown Royal bag.

Sandra Romanek, a special agent forensic scientist with the Tennessee Bureau of Investigation, testified that she performed various tests on the items

retrieved in the search. Her results revealed 13.9 grams of cocaine base and 27.4 grams of marijuana.

The jury obviously concluded that Appellant possessed these substances and intended to sell or otherwise dispense of the cocaine and marijuana because of the amounts recovered. Tenn. Code Ann. § 39-17-419 permits such an inference.

Finally, we address the evidence supporting Appellant's conviction for possession of unlawful drug paraphernalia in violation of Tenn. Code Ann. § 39-17-425(a)(1). Deputy McCaleb testified that during the search of the bedroom, he found a pack of rolling papers inside a cigar box. Deputy McCaleb found a box of plastic baggies in Appellant's dresser drawers. Deputy McCaleb explained that both rolling papers and plastic baggies are used to package, store, and inhale controlled substances. The jury properly could infer that the baggies and rolling papers belonged to Appellant, as these items were discovered inside his dresser in a bedroom used by him to store his furniture.

The judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

CONCUR:

(See below)
JOE B. JONES,  PRESIDING JUDGE


_____
GARY R. WADE,  JUDGE




        The Honorable Joe B. Jones died May 1, 1998, and did not participate in this Opinion.  We acknowledge his faithful service to this Court, both as a member of the Court and as its Presiding Judge.